A04A1012. HOSTETLER v. ANSWERTHINK, INC.
(599 SE2d 271)

ELDRIDGE, Judge.
 Michael D. Hostetler appeals from the trial court's order modifying its final judgment in his declaratory and injunctive relief action against Answerthink, Inc., regarding the nonsolicitation agreement, which contained a Florida choice of law provision; the trial court entered a final judgment that found the agreement in violation of Georgia public policy and enjoined any attempt to enforce the void nonsolicitation agreement; in a subsequent modification order, the trial court limited its injunction to application in Georgia only, while

---

Hostetler contends that the court should have enjoined its use everywhere. We agree, and reverse.

In 1994, Hostetler began work in the areas of finance, accounting transaction processing, and the design of administrative processes with Gunn Partners. In 1996, he and another associate started Exult, Inc., and they developed a business involving the open sharing of information between client companies to develop the best practices in finance and accounting; this is collaborative learning through program features, i.e., meetings, webcasts, site visits, and white papers to share information. In 2000, Gunn Partners acquired Exult, Inc., and Hostetler continued to work on collaborative learning for his former company as an employee of Exult Process Intelligence Center ("EPIC"). In February 2002, Exult, Inc. sold EPIC to Acquisition Corporation, a wholly owned subsidiary of Answerthink, Inc.

In February 2003, Hostetler became an employee of Answerthink and signed the Form Compliance Agreement, which contained a nonsolicitation provision and a provision calling for the application of Florida law in its interpretation. The agreement was signed in Georgia. Both at the time of execution of the agreement and now, Hostetler was a Georgia resident and was working for The Hackett Group, a unit of Answerthink that had its operations based in Atlanta, Georgia, where Hostetler was also based and did work. Answerthink is a corporation authorized to do business in Georgia. At The Hackett Group, Hostetler was a mid-level employee who directly supervised two other employees and worked mostly in the area of collaborative learning. On April 22, 2003, Hostetler resigned from Answerthink.

The Agreement provisions read:

> Non-competition. In further consideration of the compensation being paid to the employee and vesting of shares or options being issued to the employee pursuant to the stock option agreement, while employed by the company or during any period during which he or she is receiving severance or termination payments from the Company, the employee agrees to not, without the Company's express written consent, engage in any consulting, employment or business that is competitive with the Company.

> Non-solicitation . . . the Employee will not directly or indirectly, during the two-year period immediately following his or her termination of Employment, or through another entity . . . (B) induce or attempt to induce any customer, supplier, licensee or other business relation of the Company to cease doing business with the company or in any way interfere with

the relationship between any such customer, supplier, licensee, or business relationship and the Company.

Hostetler began a start-up business, Executive Performance Group ("EPG"), a Georgia corporation, that engages in the collaborative learning business. Hostetler provides services to clients of EPG that are similar to those performed for Gunn Partners, Exult, EPIC, and Answerthink.

Hostetler brought an action in the Superior Court of Gwinnett County, seeking declaratory and injunctive relief as to the validity and enforceability of the nonsolicitation provision, because he contended that it was unenforceable under Georgia law. On June 4 through June 6, 2003, the trial court heard the case; at the end of the hearing, the trial court stated that the nonsolicitation provision of the Agreement was unenforceable and requested written proposed findings of fact and conclusions of law from the parties.

On July 30, 2003, Answerthink filed an action in Florida to enforce the nonsolicitation provisions of the Agreement. On August 5, 2003, the trial court entered a final judgment and order finding that the Agreement was void and unenforceable and granted injunctive relief prohibiting enforcement of the nonsolicitation provision by Answerthink. The Court judgment read:

> The non-solicitation of customers clause in the Agreement between Mr. Hostetler and Answerthink is declared to be void and unenforceable. Answerthink is enjoined from attempting to enforce that provision against Mr. Hostetler and EPG.

On August 22, 2003, Answerthink moved for clarification of the order so as to limit the geographic scope to Georgia. On September 11, 2003, the trial court granted Answerthink's motion, limited the geographic scope of the injunction to Georgia, and entered the amended final judgment and injunction:

> . . . the injunction against enforceability of the non-solicitation covenant applies only to Georgia courts and those courts which apply Georgia law to determine the outcome of this dispute. . . . In light of the choice of law provision in the parties' Agreement, the Court will not enjoin the Florida action when the parties did not intend for Georgia law to apply in the first place.

Hostetler's sole enumeration of error is that the trial court erred in limiting declaratory and injunctive relief to Georgia. We agree.

a. The public policy of Georgia is that contracts in restraint of trade are prohibited. Ga. Const. of 1983, Art. III, Sec. VI, Par. V (c) (OCGA § 13-8-2 (a) (2)). A restrictive covenant as part of a contract of employment is a partial restraint of trade and will be enforced only if: (1) the restraint is reasonable; (2) founded upon valuable consideration; (3) is reasonably necessary to protect the party in whose favor it is imposed; and (4) does not unduly prejudice the interests of the public. *Swartz Investments v. Vion Pharmaceuticals*, 252 Ga. App. 365, 367 (1) (556 SE2d 460) (2001). Such restrictions must be strictly limited as to time, territorial effect, capacity in which the employee is prohibited from competing, and as to overall reasonableness. *Hulcher Svcs. v. R. J. Corman R. Co.*, 247 Ga. App. 486, 491 (4) (543 SE2d 461) (2000). The validity and enforceability of restrictive covenants limiting competition is a question of law. *Pittman v. Harbin Clinic Professional Assn.*, 210 Ga. App. 767, 768 (437 SE2d 619) (1993). In this Agreement the noncompete provision has no geographic limitation and prohibits any type of employment in competition by Answerthink or its related entities; the nonsolicitation provision is equally unreasonable, because it has no geographical limitation and applies to customers, suppliers, or licensees that Hostetler had no contact with for an unreasonable period of time in light of the overbreadth of the restrictions. Such provisions are such flagrant violations of Georgia public policy and general fairness that it is hard to believe that any court in equity and good conscience would uphold and enforce such provisions. See *Hulcher Svcs. v. R. J. Corman R. Co.*, supra at 488.

b. A choice of law provision set forth in an agreement containing a restrictive covenant will not allow the parties to choose a jurisdiction that will uphold what is against Georgia public policy; Georgia courts will decide the validity of such restrictive covenant in partial restraint of trade under Georgia law, including Georgia rules as to choice of law.

The law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state. Covenants against disclosure, like covenants against competition, affect the interests of this state, namely the flow of information needed for competition among businesses, and hence their validity is determined by the public policy of this state.

(Citations omitted.) *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676 (2) (238 SE2d 368) (1977); see also *Convergys Corp. v. Keener*, 276 Ga. 808, 810 (582 SE2d 84) (2003).

Georgia continues to follow the traditional choice of law rule, lex loci contractus, i.e., the law of the place where the contract was executed applies. *Gen. Tel. Co. &c. v. Trimm*, 252 Ga. 95, 96 (311 SE2d 460) (1984); *Convergys Corp. v. Keener*, supra at 810-811. In this case, the agreement was executed in Georgia to be applied in Georgia; Hostetler was a Georgia resident; his employer was authorized to do business in Georgia through its Atlanta office; and his work was primarily performed in Georgia; thus, the contract was performed in Georgia under Georgia law. Therefore, Georgia had sufficient significant contacts with the parties so that the choice of law was neither arbitrary nor constitutionally impermissible. See *Allstate Ins. Co. v. Hague*, 449 U. S. 302 (101 SC 633, 66 LE2d 521) (1981); *Convergys Corp. v. Keener*, supra at 810.

Choice of law provisions in agreements executed outside of Georgia by parties who were outside the state at execution and where the restrictive provision is invalid under Georgia law, will not be enforced in Georgia courts when a party moves to Georgia and begins to work in Georgia for a competitor. *Convergys Corp. v. Keener*, supra at 809-810.

c. The final judgment in a declaratory judgment action, finding the restrictive covenants void and unenforceable, should also have injunctive relief to prevent the relitigating of such issue in other jurisdictions, because Answerthink can bring repeated actions in other jurisdictions to harass and to delay competition even though such actions are ultimately dismissed under the res judicata and collateral estoppel doctrines. While Answerthink is subject to the jurisdiction of this Court so that injunctions that have extraterritorial application can be enforced here by contempt incident to jurisdiction over Answerthink, more importantly under full faith and credit, res judicata, and collateral estoppel, the final judgment of Georgia courts binds these parties as well as courts of other jurisdictions.

The Florida state court and other sister states may have concurrent subject matter jurisdiction as separate and independent jurisdictions over these parties and the issues before us; therefore, the same cause of action can be maintained between the same parties over the same issues at the same time until any injunction on appeal becomes final in multiple jurisdictions. See *Inter-Southern Life Ins. Co. v. McQuarie*, 148 Ga. 233, 235 (1) (96 SE 424) (1918); *Huff v. Valentine*, 217 Ga. App. 310, 311 (1) (457 SE2d 249) (1995). When a final adjudication on the merits has been obtained in a jurisdiction that has both personal and subject matter jurisdiction, such final

judgment can preclude other jurisdictions from litigating such issues either at the same time or subsequently; when a final adjudication on the merits has been reached, then the doctrines of res judicata and collateral estoppel cause the other jurisdiction to become bound by the finality of such judgment. *Barkley-Cupit Enterprises v. Equitable Life Assurance &c.*, 157 Ga. App. 138, 140 (1) (276 SE2d 650) (1981). The trial court in this state entered a final judgment prior to any order being rendered in any Florida court. Any nonfinal injunction entered in Florida or another jurisdiction would be "merely pendente lite relief," and there is a long procedural journey from a final judgment and affirmance by the District Appeals Court and by the Supreme Court of Florida. See generally *GTE Sylvania, Inc. v. Consumers Union &c.*, 445 U. S. 375, 379-380 (100 SC 1194, 63 LE2d 467) (1980). "Hearings on these nonpermanent injunctions do not serve the same purpose as a hearing on the merits; they only preserve the status quo awaiting resolution of the merits." (Citations omitted.) *Texas v. Wellington Resources Corp.*, 706 F2d 533, 537 (5th Cir. 1983); see also *Meineke Discount Muffler v. Jaynes*, 999 F2d 120, 122, n. 3 (5th Cir. 1993). Thus, an injunction with extra-territorial effect may not be enforced by another jurisdiction prior to such injunction becoming permanent and a final judgment, although such injunction could be enforced prior to finality in Georgia by contempt. OCGA § 9-4-2.

> In the race to the courthouse, victory does not go to the swiftest litigant with the first injunction, but to the litigant with the first final judgment, making a final disposition on the merits. See *Barkley-Cupit Enterprises v. Equitable Life Assurance &c.*, supra at 140. . . . [T]he trial court's declaratory judgment will "relieve the petitioner from uncertainty and insecurity." *Calvary Ind. Baptist Church v. City of Rome*, [208 Ga. 312, 314 (3) (66 SE2d 726) (1951)]. The trial court's judgment and this Court's opinion are not advisory or hypothetical in nature, but void a covenant that flagrantly violates the public policy of this State and that seeks to prohibit [Hostetler] from working for [anyone] in this State [or any other state] in competition with [Answerthink or its affiliated entities]. See *Cheeks v. Miller*, 262 Ga. 687, 689 (425 SE2d 278) (1993); *Cook v. Sikes*, 210 Ga. 722, 727-728 (82 SE2d 641) (1954).

*Hulcher Svcs. v. R. J. Corman R. Co.*, supra at 488 (1).

d. The trial court erroneously followed *Keener v. Convergys Corp.*, 342 F3d 1264, 1270 (11th Cir. 2003), in modifying its permanent injunction and in limiting the permanent injunction to Georgia.

First, this is a federal diversity case that is persuasive authority only. See *Hayes v. Superior Leasing Corp.*, 136 Ga. App. 98, 100 (220 SE2d 86) (1975). Second, the federal statute on injunctions and cases on injunctions differ from Georgia law, because under federal authority injunctive relief should be narrowly tailored to fit the specific legal adjudication at issue and restrain no more than what is reasonably required to accomplish its ends. *Keener v. Convergys Corp.*, supra at 1270; cf. *Columbia County v. Doolittle*, 270 Ga. 490, 493 (3) (512 SE2d 236) (1999) (overly-broad injunction is an abuse of discretion); *Prime Bank v. Galler*, 263 Ga. 286, 289 (4) (430 SE2d 735) (1993) ("The injunction should always be so worded as not to impose on defendant any greater restriction [burden] than is necessary to protect the plaintiff from the injury of which he complains.") (punctuation omitted). While the differences of law are not great, nonetheless, the differences exist. Id. Third, the permanent injunction in *Keener* dealt with overly broad language "in any court in the world," which drastically extends extra-territorial reach to the limit. Finally, the case is distinguishable from this case on the facts: *Keener* executed the contract in Ohio; he worked in Ohio for Convergys Corporation until he quit and moved to Georgia to work for a competitor; he intentionally misrepresented that he was quitting to become a stock-broker to mislead Convergys Corporation from enforcing the agreement prior to his leaving Ohio; and he brought the preemptive suit in Georgia, preventing Convergys Corporation from enforcing the covenant under Ohio law. The Eleventh Circuit opinion seemed to apply Georgia law reluctantly and compared it to the more liberal Ohio law on restrictive covenants that allowed the blue pencil rule to apply. Under the circumstances, the lower court's reliance on the Eleventh Circuit's decision in *Keener* was misplaced as stating Georgia law.

*Judgment reversed. Adams, J., concurs. Ruffin, P. J., concurs in judgment only.*

DECIDED MAY 7, 2004.

*Buckley & Klein, Charles R. Bliss*, for appellant.
*Ford & Harrison, Jefferson B. Blandford*, for appellee.