## A04A1920. DENT WIZARD INTERNATIONAL CORPORATION v. BROWN.
### (612 SE2d 873)

ADAMS, Judge.

Dent Wizard International Corporation (DWIC) appeals from the trial court's order granting Kip Brown's request for an interlocutory injunction enjoining DWIC from enforcing the terms of its employment contract with Brown.

The record shows that DWIC is in the business of providing paintless dent removal (PDR) services, and its primary customers are car rental companies, car dealerships and other owners of automobile fleets. Brown was hired in 1993 as a technician by a franchisee of DWIC, but later became an employee of DWIC, when it reacquired the franchise. Brown described the position of technician as "the lowest form of non-managerial employee" at DWIC. But John Power, Brown's supervisor at DWIC, said that in his position as a technician, Brown was the primary contact with the customers he serviced as he performed the physical PDR operation. Powers stated that Brown was responsible for, among other things, promoting new and existing DWIC services to DWIC customers, ensuring that DWIC customers were satisfied with the services and soliciting new customers.

Brown had no training or experience in the PDR process before he came to work with DWIC. But Brown described his DWIC training as "rudimentary," and stated that he soon found the company's process to be "outmoded and outdated." Throughout his employment with DWIC, Brown altered the DWIC process with new techniques he learned from other technicians and independent contractors. He said that the technique he uses in his current business is substantially different from that taught him by DWIC. The process he now employs involves drilling holes and working from the center of the dent to each of its four corners. Brown said that DWIC does not advocate drilling holes and works from the center of the dent in spiral to the outside of the dent. He said that in the PDR industry, these processes are "as different as night and day."

In October 1999, Brown signed the employment contract,[1] out of which this litigation arose and which contained separate covenants not to compete and not to solicit business, as well as a nonsolicitation of employees clause. The covenant not to compete provides in relevant part that:

> [Brown] agrees that for a period of two (2) years after the occurrence of the termination of [Brown's] employment for any reason, he will not, without the prior, express written approval of the President of [DWIC] in each case, own, operate, control or work in a business in direct competition with [DWIC's business] where, in the performance of such employment, [Brown] will engage in the paintless removal of dents or dings from automobiles or other motor vehicles within the Trade Area as defined herein.

Trade Area was defined in the agreement to include DeKalb, Fulton, Douglas and Clayton counties.

Brown averred in his affidavit that he had performed work for DWIC in only two of the four counties — Clayton and Fulton, although he alleged in the jurisdictional statement in his complaint that he had worked primarily in DeKalb County. Power stated in his affidavit that Brown had worked in Fulton and Douglas counties.

Under the nonsolicitation clause, Brown agreed for a period of two years after leaving DWIC not to solicit PDR business from any customer of DWIC, including "actively sought prospective customers" with whom he had "material contact" during his employment with DWIC. The agreement defined material contact to include, inter alia, (1) customers with whom he had contact in connection with DWIC's business within twelve months prior to his termination and (2) customers whose DWIC business resulted in compensation for Brown within two years prior to his termination. Brown also agreed not to solicit DWIC employees for two years after he left the company.

On March 26, 2003, Brown informed DWIC, via letter, that he was terminating his employment; his last day of work was April 9, 2003. On the same day he resigned, Brown filed this lawsuit seeking injunctive relief and a declaratory judgment that the restrictive covenants in his employment contract were invalid restrictions of trade. DWIC filed an answer and counterclaim, seeking injunctive relief to prevent Brown from breaching the terms of the contract.

---

[1] Although Brown's appellate brief references prior employment agreements between the parties, such agreements are not part of the record and cannot be considered by this Court on appeal. See *Fiek v. State*, 266 Ga. App. 523, 526 (2) (597 SE2d 585) (2004). Accordingly, DWIC's motion to strike any references to these agreements is granted.

The trial court held a nonevidentiary hearing on Brown's motion for injunctive relief on May 5, 2003. After the hearing, the parties submitted briefs to the trial court with affidavits from the parties. Five months later, on October 5, 2003, the trial court granted Brown's motion for an interlocutory injunction, which by implication denied DWIC's request for injunctive relief.

The decision whether to grant or deny interlocutory injunctive relief is in the discretion of the trial court and we will not disturb the trial court's order in the absence of a manifest abuse of that discretion. *Kennedy v. W. M. Sheppard Lumber Co.*, 261 Ga. 145, 146 (1) (401 SE2d 515) (1991). "Although a trial court has broad discretion in deciding whether to grant or deny an interlocutory injunction, the trial court's discretion can be ultimately circumscribed by the applicable rules of law." (Footnote omitted.) *Univ. Health Svcs. v. Long*, 274 Ga. 829, 829-830 (561 SE2d 77) (2002).

> The purpose of an interlocutory injunction is to preserve the status quo pending a final adjudication of the case, and in determining whether to preserve the status quo, the trial court must balance the conveniences of the parties pending the final adjudication with consideration being given to whether greater harm might come from granting the injunction or denying it.

(Footnotes omitted.) Id.

1. Generally, contracts in restraint of trade or that tend to lessen competition are against public policy and are void. *Habif, Arogeti & Wynne v. Baggett*, 231 Ga. App. 289, 292 (2) (498 SE2d 346) (1998). In considering whether a restrictive covenant is enforceable, a court must first determine the level of scrutiny to apply. *Advance Technology Consultants v. RoadTrac*, 250 Ga. App. 317, 319 (1) (551 SE2d 735) (2001). "There are three levels: strict scrutiny, which applies to employment contracts; middle or lesser scrutiny, which applies to professional partnership agreements; and much less scrutiny, which applies to sale of business agreements." (Citation omitted.) *Holsapple v. Smith*, 267 Ga. App. 17, 19 (1) (599 SE2d 28) (2004). Because the covenants in this case arise out of an employment agreement, they are subject to the highest level of scrutiny.

Courts will enforce a restrictive covenant in an employment contract only if: "(1) the restraint is reasonable; (2) founded upon valuable consideration; (3) is reasonably necessary to protect the party in whose favor it is imposed; and (4) does not unduly prejudice the interests of the public." (Citation omitted.) *Hostetler v. Answerthink, Inc.*, 267 Ga. App. 325, 328 (a) (599 SE2d 271) (2004). Moreover, "[s]uch restrictions must be strictly limited as to time, territorial

effect, capacity in which the employee is prohibited from competing, and as to overall reasonableness." (Citation omitted.) Id. "Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all other circumstances." (Punctuation and footnote omitted.) *Habif, Arogeti & Wynne v. Baggett*, 231 Ga. App. at 292 (2).

The covenant not to compete in Brown's employment agreement contained a four-county territorial restriction. The undisputed evidence shows that Brown worked in only two to three of the specified counties, but does not establish that Brown worked in the entire trade area. Under such circumstances, the restriction will be considered overly broad on its face unless the record contains evidence demonstrating a strong justification for such a restriction:

> While this Court will accept as prima facie valid a territory where the employee worked and the employer does business, a territory that is only where the employer does business but the employee did not work is overly broad on its face, absent strong justification for such protection, other than the desire not to compete with the former employee.

(Citations omitted.) *Hulcher Svcs. v. R. J. Corman R. Co.*, 247 Ga. App. 486, 491 (4) (543 SE2d 461) (2000).

We find that the trial judge could have properly found the record in this case did not justify the territorial restriction in Brown's contract. Although DWIC presented evidence that it had trained Brown in the PDR process, Brown described the training as rudimentary and DWIC failed to present any evidence showing that its process was in any way unique. Moreover, the undisputed evidence shows that Brown no longer employed the methods he learned in his DWIC training. Thus, Brown's DWIC training does not outweigh the harm imposed by the territorial restriction. See *Brunswick Floors v. Guest*, 234 Ga. App. 298, 300-301 (506 SE2d 670) (1998) (minimal training does not outweigh the substantial harm imposed by 80-mile territorial restriction).

DWIC also asserts that its interest in its customer relationships justified the restriction. While this may be a valid business interest, the trial court could have found that the restriction in Brown's contract goes beyond what is reasonably necessary to protect DWIC's interests in its customers, as it prohibits Brown from engaging in the PDR business with anyone in the territorial area. "Where the restriction is broad — for example, not limited to clients the employee served — the territorial limitation must be specified and closely tied to the

area in which the employee actually worked." (Punctuation and footnote omitted.) *Gale Indus. v. O'Hearn*, 257 Ga. App. 220, 223 (2) (570 SE2d 661) (2002).[2]

Accordingly, the trial court properly found that the covenant not to compete was overly broad, and we find no abuse of discretion in the court's grant of Brown's motion for interlocutory injunction.

2. Georgia does not follow the "blue pencil" doctrine of severability in construing employment contracts. Therefore, because one restrictive covenant in Brown's agreement is unenforceable, they are all unenforceable. *Riddle v. Geo-Hydro Engineers*, 254 Ga. App. 119, 121 (561 SE2d 456) (2002); *Advance Technology Consultants v. Road-Trac*, 250 Ga. App. at 320-321 (2).

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 29, 2005.

*Dow, Lohnes & Albertson, Jill M. Harrison, Matthew D. Crawford*, for appellant.

*Baum & McGahren, David E. Baum, Andrea M. Johnson*, for appellee.

---

[2] We find the cases cited by DWIC to be distinguishable. These cases involved either (1) an employee who had worked in the entire restricted territory at some point during the employment, *Habif, Arogeti & Wynne v. Baggett*, 231 Ga. App. at 292 (2) (b); *Sysco Food Svcs. v. Chupp*, 225 Ga. App. 584, 586 (1) (484 SE2d 323) (1997), or (2) an employee who was the company's sole representative in the restricted area, and the court found that the record demonstrated that the employer had an "unusual business." *Nat. Settlement Assoc. &c. v. Creel*, 256 Ga. 329, 331 (3) (b) (349 SE2d 177) (1986).