## A10A0702. PEACHTREE FAYETTE WOMEN'S SPECIALISTS, LLC v. TURNER.

(699 SE2d 69)

ADAMS, Judge.

Peachtree Fayette Women's Specialists, LLC ("PFWS")[1] appeals the trial court's order declaring a noncompetition clause in its employment contract with Heather M. Turner, M.D., to be unenforceable. We affirm.

PFWS provides obstetric and gynecological services to patients out of two locations in Fayetteville, Georgia. The sole owner and principal of PFWS is Dr. William Cook. Turner is a physician who began working for PFWS in October 2006. And on October 6, 2006, the parties signed an employment agreement[2] that contained restrictive covenants relating to Turner's post-employment activities, including a two-year noncompetition clause. The pertinent clause states:

> *Non-Competition.* Employee acknowledges that Employer has expended and will expend considerable time, effort and capital to develop its medical practice, including its patient base and referral sources. Employee further acknowledges that Employer has a legitimate business interest in protecting its medical practice. In furtherance of the foregoing, Employee agrees that she will not, during the Restricted Period, provide obstetrical and gynecology medical services (either for his [sic] own account or benefit, or for or on behalf of any other person, firm, partnership, association, corporation, business organization or entity other than Employer), within the Restricted Territory.

The agreement defines the Restricted Period as extending two years after the termination of the employment agreement. Further, "Restricted Territory" is defined to mean

> (1) a five (5) mile radius from Employer's office located at 1267 Hwy 54 West, Fayetteville, Georgia, (2) at Piedmont Fayette Hospital, Fayetteville, Georgia, and (3) at Piedmont Hospital, Atlanta, Georgia.[3] Employee acknowledges that she will provide services on behalf of Employer during the

---

[1] PFWS does business under the name The Women's Specialists of Fayette.

[2] The employment agreement was terminable at will by either party at any time with 90 days written notice.

[3] Piedmont Hospital, Atlanta, Georgia will be referred to herein as "Piedmont Atlanta." Piedmont Fayette Hospital will be referred to herein as "Piedmont Fayette."

term of this Agreement at each of the locations described in clauses (1), (2), and (3) of this subsection.

Turner's employment terminated as of June 14, 2009. She initiated this declaratory judgment action on April 28, 2009, prior to her last day of employment, to determine whether the noncompetition clause was enforceable.

At the evidentiary hearing in this case, Turner took issue with the portion of the noncompetition clause restricting her practice at Piedmont Atlanta. Turner testified she was not told when she was hired that she would be performing services at Piedmont Atlanta. She was never asked to work at Piedmont Atlanta, and Cook confirmed that, in fact, she never worked there during her employment with PFWS. Moreover, PFWS never maintained an office at Piedmont Atlanta during Turner's employment.[4]

Nevertheless, Turner's employment agreement provided that her duties at PFWS would include practicing medicine at the PFWS "offices located at Piedmont Fayette Hospital, Fayetteville, Georgia and Piedmont Hospital, Atlanta, Georgia . . . ," and Turner acknowledged in the noncompetition clause that she "will provide services" at, inter alia, Piedmont Atlanta. Further, PFWS completed an application on Turner's behalf to obtain staff privileges at Piedmont Atlanta. Although Turner testified that these were courtesy staff privileges only, Cook stated that Turner and the other PFWS doctors had full active privileges at the hospital.

Cook explained that in October 2006 Piedmont Fayette was just beginning to provide obstetrical services, and the State of Georgia limited the number of labor and delivery rooms (LDRs) the hospital could maintain. PFWS was concerned that Piedmont Fayette's limited LDR space would be overwhelmed with patients, so the practice group planned to perform all repeat Caesarean sections, which could be scheduled in advance, at Piedmont Atlanta. For a short period, therefore, between September 22 and into October 2006 when Turner was hired, Cook and another PFWS associate, Dr. Ralsten, scheduled all repeat C-sections at Piedmont Atlanta. But PFWS abandoned this plan when the obstetrics volume at Piedmont Fayette turned out to be too low because other doctors continued to use a nearby regional hospital in lieu of Piedmont Fayette.

---

[4] In fact, PFWS apparently has no offices outside Fayetteville. And although the corporation presented evidence that, while in its employ, Turner had treated at least 119 patients from Fulton County, where Piedmont Atlanta is located, that evidence is irrelevant to the issue of whether the noncompetition clause in this case is enforceable. The clause does not attempt to prevent Turner from treating Fulton County patients; it attempts to prevent her from treating anyone at Piedmont Hospital although it is undisputed that she never treated any patients there, from Fulton County or otherwise.

PFWS continued, however, to refer all births occurring before the 34th week of pregnancy to physicians at Piedmont Atlanta, because the neonatologists at Piedmont Fayette did not feel comfortable using the hospital's nursery facilities for such births. In order to make such a transfer, a Piedmont Atlanta doctor had to agree to accept the patient. Cook testified that PFWS doctors obtained staff privileges at Piedmont in case they could not find a receptive doctor and had to handle the delivery themselves. Cook conceded, however, that such a situation never arose. Turner and the other doctors resigned their privileges at Piedmont Atlanta on June 11, 2008, after the practice group determined the facilities at Piedmont Fayette had improved, and they no longer needed Piedmont Atlanta as backup.

Even though Turner never practiced at Piedmont Atlanta and the entire PFWS staff dropped its privileges there in 2008, Cook testified that the restriction against Turner practicing at Piedmont Atlanta was still necessary. He testified that he brought referrals from Piedmont Atlanta "to the table" at PFWS because he previously had practiced there for 17 years. He had a number of referral sources there, whom he introduced to Turner.

In its declaratory judgment, however, the trial court found that the noncompetition clause went beyond what was reasonably necessary to protect PFWS's business interests, noting that it restricted Turner's ability to work in a territorial area in which she did not treat any patients during her employment. The trial court was unpersuaded by PFWS's arguments that the restriction against practicing medicine at Piedmont Atlanta was necessary because it was a referral source for the corporation. The trial court found that "the prospect of regularly practicing in Atlanta was seemingly abandoned by [PFWS] long before [Turner] terminated her employment." The Court further found that "[p]atient referrals arise through professionally-established relationships, and there is no evidence indicating that Plaintiff was able to develop such relationships since she never personally worked at [Piedmont Atlanta]." Accordingly, the trial court found the entire clause unenforceable under Georgia law.

"Whether the restraint imposed by [an] employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances." (Citations and punctuation omitted.) *Coleman v. Retina Consultants*, 286 Ga. 317, 319-320 (1) (687 SE2d 457) (2009). We apply a de novo review to a trial court's ruling on a question of law, *Palmer & Cay of Ga. v. Lockton Cos.*, 284 Ga. App. 196, 197 (643 SE2d 746) (2007), but "[a] judge's factfindings are not [to be] disturbed if there is any evidence

to support them." *Keeley v. Cardiovascular Surgical Assocs.*, 236 Ga. App. 26, 29 (2) (510 SE2d 880) (1999).

"Georgia courts have traditionally applied close scrutiny to employment contracts containing restrictive covenants and have upheld them only when the covenant is strictly limited in time, territorial effect, and activities prohibited." *Palmer & Cay*, 284 Ga. App. at 198. But

> it has long been the law that non-competition clauses in physicians' employment contracts [will be upheld] . . . [l]ike such clauses in other employment contracts, if they are sufficiently limited and are reasonable, considering the interest to be protected and the effects on both parties to the contract. . . .

(Citation omitted.) *Pittman v. Harbin Clinic Professional Assn.*, 210 Ga. App. 767, 768 (437 SE2d 619) (1993). Nevertheless,

> [w]hen the contract involves the practice of a profession, it will be held void if it needlessly oppresses one of the parties without affording any corresponding protection to the other. In particular, it should not so operate as to cause one party to abstain from practicing his profession at a time or place when so doing would not benefit the other contracting party.

(Citations omitted.) *Broome v. Ginsberg*, 159 Ga. App. 202, 203 (2) (283 SE2d 1) (1980). Cf. *Singer v. Habif, Arogeti & Wynne*, 250 Ga. 376, 377-378 (1) (297 SE2d 473) (1982) (restrictive nonsolicitation covenant was unreasonable because it overprotected the legitimate interests of the employer while unreasonably affecting the employee).

The restriction against Turner's practicing medicine at Piedmont Atlanta offers no corresponding protection to PFWS. PFWS does not conduct business at Piedmont Atlanta, its physicians have dropped their staff privileges there and Turner never worked there.[5] This Court has held that where a restrictive covenant is not limited to an area where an employee worked, it will be considered overly broad per se unless a strong justification exists for such a restriction:

> While this Court will accept as prima facie valid a territory where the employee worked and the employer does busi-

---

[5] Although Turner acknowledged in the employment contract that she "will provide services" at Piedmont Atlanta, such language, while perhaps reflecting the parties' intentions at the time, does not override the undisputed evidence showing that she never worked there and the corporation no longer works there.

ness, a territory that is only where the employer does business but the employee did not work is overly broad on its face, absent strong justification for such protection, other than the desire not to compete with the former employee.

(Citation omitted.) *Dent Wizard Intl. Corp. v. Brown*, 272 Ga. App. 553, 556 (1) (612 SE2d 873) (2005). In this instance, the restriction covers not only a facility where Turner never worked, but also where PFWS has abandoned all intention of working. Moreover, the clause's restricted activity is broad, preventing Turner from practicing her specialty in any way at Piedmont Atlanta. "Where the restriction is broad — for example, not limited to clients the employee served — the territorial limitation must be specified and closely tied to the area in which the employee actually worked." (Punctuation omitted.) Id. at 556-557 (1).

PFWS has not established a sufficient justification for the broad restriction in this case. Although PFWS argues that the restriction is necessary to support Cook's stream of referrals based upon his prior, long-term employment with Piedmont Atlanta, the trial court found that PFWS failed to show that Turner established relationships with anyone at Piedmont Atlanta during her employment so as to generate her own referrals. The record supports this finding. And we have found no authority allowing an employer to protect referral sources by prohibiting an employee from working in an area where those sources happen to be, even though the employer does no work there, the employee never worked there and the employee was not shown to have developed any contacts there. Cf. *Singer*, 250 Ga. at 377-378 (1) (without "the benefit of the trust and confidence" built up through professional relationships, employee has no ability to unduly influence clients for his own benefit and thus holds no "unfair competitive edge" over employer from which employer needs protecting); *Broome*, 159 Ga. App. at 203 (3) (where professional corporation ceased operating, in this instance due to principal's death, no professional competition could exist and noncompete clause unenforceable). Compare *Keeley*, 236 Ga. App. at 30 (4) (court applied lesser, middle level of scrutiny applicable to professional medical partnership agreement to uphold 75-mile radius restriction where partnership had "a substantial patient base and a network of referring physicians").

Accordingly, we find the restriction prohibiting Turner from providing obstetric and gynecological medical services at Piedmont Atlanta to be overly broad. Compare *McAlpin v. Coweta Fayette Surgical Assocs.*, 217 Ga. App. 669, 672 (2) (458 SE2d 499) (1995) (restriction preventing doctor from practicing in ten-county area

upheld where employer doctor practiced in all counties and expected business in those counties to grow); *McMurray v. Bateman*, 221 Ga. 240, 255 (4) (144 SE2d 345) (1965) (territorial restriction upheld where employer had "reasonable prospects" of extending practice into restricted area). And in Georgia, "[e]ven if only a portion of a non-compete clause in an employment contract would be unenforceable, the entire covenant must fail because this Court will not apply the blue-pencil theory of severability to such restrictive covenants." *Coleman*, 286 Ga. at 320 (1). Accordingly, the trial court properly found the entire restrictive covenant to be unenforceable.[6]

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

### DECIDED JULY 8, 2010.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, Steven G. Hall, Kevin A. Stine*, for appellant.

*Trammell, Camp & Lewis, Robert T. Trammell, Jr., Stephen A. Camp*, for appellee.

---

[6] PFWS urges us, in determining the enforceability of the noncompetition clause, to consider the employment contract only as of the time it was written and to ignore the actual circumstances of Turner's employment, citing *Rakestraw v. Lanier*, 104 Ga. 188, 194 (30 SE 735) (1898) ("In determining whether such restriction is reasonable, the court will look alone to the time when the contract was entered into. [Cit.]"). But *Rakestraw* involved a restrictive covenant in a professional partnership involving two physicians. We find no support in Georgia for applying such a rule in the context of an employer-employee contract, which requires a higher level of scrutiny. See *McAlpin*, 217 Ga. App. at 672 (2).