**FOURTH DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P.J., and COOMER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 12, 2020**

# In the Court of Appeals of Georgia

A19A1750. FORTRESS INVESTMENT GROUP, LLC et al. v. HOLSINGER.

COOMER, Judge.

Fortress Investment Group LLC and Hybrid GP Holdings LLC (collectively, "Appellants") appeal from the superior court's order granting Joel Holsinger's motion for an interlocutory injunction to enjoin Appellants from enforcing or threatening or attempting to enforce the restrictive covenants arising from his employment with Fortress. On appeal, Appellants contend that the trial court erred by granting the preliminary injunction without weighing the evidence of Holsinger's unclean hands; by adopting an analysis that overlooked material provisions of the parties' agreement; and by entering an overbroad order. Because we agree that the injunction is overly broad, we vacate the judgment and remand the case for the trial court to enter an order

that does not prevent Fortress from pursuing remedies that do not depend on the restrictive covenants contained in or incorporated into the employment agreement.

Viewed in the light most favorable to the ruling below,[1] the evidence shows that in 2008, Holsinger became an employee of Fortress. Fortress is an asset management firm that provides expertise across a wide range of investment strategies on behalf of institutional clients and private investors worldwide. When he was first hired by Fortress, Holsinger signed an employment agreement under which he became a managing director and manager of the Atlanta office of Fortress. Holsinger entered a new employment agreement with Fortress dated January 15, 2010, which superseded his earlier agreement. Under the 2010 employment agreement, Holsinger continued to manage the Atlanta office of Fortress until he resigned in 2018.

The 2010 employment agreement includes a series of restrictive covenants, including (1) a one-year non-compete clause (the "Non-Compete Clause"); (2) an eighteen-month prohibition on soliciting or hiring current or former employees of Fortress (the "Non-Recruitment Clause"); and (3) an eighteen-month prohibition on soliciting certain investors and other entities who had done business with Fortress

---

[1] See *Srisovana v. Cambodian Buddhist Society, Inc.*, 269 Ga. App. 600, 600 (604 SE2d 637) (2004).

(the "Non-Solicitation Clause"). The 2010 employment agreement lists these restrictive covenants in a section titled "Protective Covenants," and includes a provision (the "Tolling Clause") stating that "The temporal duration of the Protective Covenants shall not expire, and shall be tolled, during any period in which . . . you are . . . in violation of any of such Protective Covenants, and all such restrictions shall automatically be extended by the period of . . . your violation of any such restrictions."

The 2010 employment agreement notes that Holsinger was granted interests in Hybrid as part of his compensation for his work as a Fortress employee. Hybrid's limited liability agreement contains a "Duty of Loyalty" provision (the "Duty of Loyalty Clause") that, in relevant part, imposes on Holsinger and other Hybrid members a "duty and obligation . . . to refrain from competing with any member of the Credit Funds Group in the conduct of its business before the dissolution of [Hybrid]." The "Credit Funds Group" includes Fortress, investment funds or entities associated directly or indirectly with Fortress, and a host of affiliates. The Duty of Loyalty Clause does not expire with the termination of a member's employment with Fortress, but purportedly applies until the dissolution of Hybrid, which can occur only with the consent of Hybrid's managing member. Moreover, a member, such as

3

Holsinger, cannot voluntarily resign or withdraw from Hybrid prior to dissolution unless Hybrid's managing member allows it.

Holsinger's 2010 employment agreement expressly incorporates the Duty of Loyalty Clause as follows: "all restrictions and covenants contained in the Hybrid Documents (including without limitation, the 'Duty of Loyalty' as defined therein) are hereby incorporated by reference into this Letter Agreement." Holsinger resigned from Fortress in March 2018. At that time, his vested Hybrid interests were valued at approximately $30 million. After resigning from Fortress, Holsinger met with several other firms regarding future employment, including an asset management firm named Ares Operations LLC. In-house counsel for Fortress sent Ares letters in June and November 2018, alleging Holsinger had violated his restrictive covenants and threatening to sue Ares for facilitating those alleged breaches if Ares hired him. Fortress followed with another letter to Ares on December 17, 2018. Unlike the previous two letters, this one was sent by outside counsel for Fortress. The December 17, 2018 letter accused Holsinger of breaching his restrictive covenants and threatened "that Ares will compound its exposure even further if it consummates the hiring of Mr. Holsinger." Eighteen days later, Holsinger filed suit in Fulton County Superior Court seeking (1) a declaration that the restrictive covenants described

above are invalid and unenforceable and (2) injunctive relief barring Appellants from enforcing or threatening to enforce the restrictive covenants. On January 16, 2019, Holsinger sought an interlocutory injunction barring Appellants from "enforcing or threatening or attempting to enforce restrictive covenants arising from his employment with Fortress[.]" On February 5, 2019, Fortress filed an "emergency motion" asking the superior court to compel Holsinger to submit his electronic devices for forensic imaging and to return allegedly confidential information. The superior court found no emergency and denied the motion.

On February 19, 2019, Appellants filed their memorandum in opposition to Holsinger's motion for an interlocutory injunction. The same day, before Appellants filed their memorandum, Hybrid's managing member repurchased Holsinger's vested interests in Hybrid, based on his allegedly disloyal conduct. In their memorandum, Appellants argued that, as a result of Hybrid's purchase of Holsinger's interest in Hybrid, Holsinger was no longer a member of Hybrid and no longer subject to the Duty of Loyalty Clause. Consequently, according to Appellants, the question of whether the Duty of Loyalty Clause was enforceable was thus moot. After a hearing, the superior court granted Holsinger's motion.

"[A] trial court has broad discretion to decide whether to grant or deny a request for an interlocutory injunction. We will not disturb the result reached below unless we find a manifest abuse of discretion, a total lack of evidence to support that ruling, or an erroneous interpretation of the law." *Srisovana*, 269 Ga. App. at 601 (citations and punctuation omitted).

1. Appellants contend that the trial court erred in refusing to consider the unrefuted evidence of Holsinger's unclean hands. We disagree. The trial court specifically addressed Appellants' unclean hands argument in its order granting Holsinger's motion, finding that Appellants' "unclean hands defense does not justify refusing to enjoin prospective enforcement of the restrictive covenants[.]" .

> "Unclean hands" is a shorthand reference to OCGA § 23-1-10, which states, "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." OCGA § 23-1-10 embodies both the "unclean hands" doctrine and the concept that one will not be permitted to take advantage of his own wrong. However, relief is precluded only if the inequity so infects the cause of action that to entertain it would be violative of conscience. The inequity must relate directly to the transaction concerning which complaint is made. The rule refers to equitable rights respecting the subject-matter of the action. It does not embrace outside matters.

6

*Bank of New York Mellon v. Edmondson*, 344 Ga. App. 823, 826 (1) (812 SE2d 299) (2018) (citations omitted). Appellants contend that there is unrefuted evidence that Holsinger, while a managing director of the Atlanta office of Fortress and a member of Hybrid, recruited subordinates to leave Fortress for Ares, a major competitor of Fortress, downloaded valuable proprietary information belonging to Fortress to gain an unfair competitive advantage, then concealed his wrongdoing through fraud and deceit. Appellants argue that this is evidence of unclean hands, which bars Holsinger's claims for injunctive relief as a matter of law because it directly relates to the subject matter of Holsinger's claims — the restrictive covenants in the employment agreement. The trial court considered whether Holsinger had unclean hands, but found that "Holsinger cannot have unclean hands for violating an unenforceable covenant" and that "even if Holsinger violated his duties under a Confidentiality Agreement or solicited parties to leave while he was still employed, that would not render post-termination restraints on solicitation and recruitment enforceable going forward, if those restraints violate Georgia law and policy."

Appellants argue that the trial court should not have even reached the question of whether the restrictive covenants in the employment agreement were enforceable because unclean hands is a threshold issue that must be decided before the merits of

7

the case are reached. However, to determine whether unclean hands bars injunctive relief, a trial court must first determine whether the party seeking injunctive relief has unclean hands. See, e.g., *Bishop Eddie Long Ministries, Inc. v. Dillard*, 272 Ga. App. 894, 901 (2) (613 SE2d 673) (2005) (Where plaintiffs did not have easement rights authorizing them to plug up a dam or harvest trees, trial court had good reason to deny an injunction based on its finding that plaintiffs' wrongful conduct in plugging up the dam and harvesting trees constituted unclean hands.) Under the circumstances of this case, the superior court acted well within its broad discretion when it determined that Holsinger could not have unclean hands for violating an unenforceable covenant.

In support of their argument, Appellants rely heavily on *Holland Elec., Heating & Plumbing Co. v. Holland Heating & Air Conditioning, Inc.,* 259 Ga. 256 (379 SE2d 404) (1989). In *Holland*, two businessmen, Mr. Holland and Mr. Hively, agreed that if either party's employment with their company was terminated, that party would not compete within a 75-mile radius for three years. *Holland*, 259 Ga. at 256. When Mr. Holland left the company and began competing with it, Mr. Hively obtained an injunction enforcing the covenant not to compete. Id. The Supreme Court reversed because Mr. Hively was also competing with the company, and Mr. Hively could not

"compete with [the company] and simultaneously invoke the power of equity to prevent Mr. Holland and Holland Electric from doing the same thing." Id. Holland is not applicable to this case because, unlike the plaintiff in Holland who was seeking to enforce a valid non-compete convenant, Holsinger is seeking to enjoin enforcement of invalid restrictive covenants. Holsinger can't have "unclean hands" from his failure to abide by restrictive covenants that are unenforceable. Appellants have not cited any case, and we have not found any case, concluding that restrictive covenants violating Georgia public policy should be enforced because they have been violated by the employee.

Appellants further contend that by accepting, without protest, an exit letter from Fortress which defined the duration of the restrictive covenants, Holsinger must be held to its terms. However, because Appellants did not make this estoppel-by-silence argument below, it is waived on appeal. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("Routinely, this Court refuses to review issues not raised in the trial court. . . . Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court." (citations omitted)). Furthermore, Appellants suggest that because Holsinger did not promptly file a declaratory judgment action upon receipt of the exit letter, laches bars his claims for

9

injunctive relief. "To establish the affirmative defense of laches, [a defendant must] come forward with evidence showing inexcusable delay and prejudice resulting therefrom." *Harvey v. Bank One, N.A.*, 290 Ga. App. 55, 58 (2) (658 SE2d 824) (2008). Appellants have made no showing of either inexcusable delay or that they were prejudiced by Holsinger's failure to promptly file a declaratory judgment action upon receipt of his exit letter. "The mere lapse of time is insufficient to establish the affirmative defense of laches." Id. Accordingly, this claim of error is without merit.

2. Appellants next contend that the trial court erred in holding that the tolling clause in the employment agreement invalidates all the protective covenants for lack of defined temporal limits. The superior court held that the tolling clause violates Georgia law because it potentially extends the duration of all of the restrictive covenants without limit. Appellants argue that the superior court failed to consider a clause in the employment agreement providing that if any restrictive covenant is "held to be unenforceable by reason of it extending for too great a period of time . . . such covenant shall be interpreted to extend only over the maximum period of time for which it may be enforceable . . . as determined by the court making such determination[.]" According to Appellants, this clause, which it refers to on appeal as the "Temporal Cap," reflects the parties' agreement that the protective covenants

10

can never be interpreted by a Georgia court as exceeding Georgia law's temporal outer limits. Appellants argue that the Temporal Cap insulates from challenge the covenants to which it applies. We disagree.

Appellants contend that in *Burson v. Milton Hall Surgical Assoc., LLC*, 343 Ga. App. 159, 163 (1) (a) (806 SE2d 239) (2017), we analyzed and approved a similar clause, because "the contract clearly define[d] the process by which it may be reformed." However, in *Burson*, the provision in question simply allowed the parties to review the geographical scope of a restrictive covenant "from time to time" and to modify that scope "only by written amendment to this Agreement." *Burson*, 343 Ga. App. at 162 (1) (a). The provision in *Burson* did not require a court to reform an overbroad covenant to comply with applicable law.

"With regard to employment contracts, Georgia law now generally permits the enforcement of contracts that restrict competition during the term of a restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities, subject to certain limitations[.]" *Burson*, 343 Ga. App. at 160 (citations and punctuation omitted).

> Any restrictive covenant not in compliance with the provisions of [OCGA Title 13, Chapter 8, Article 4] is void and unenforceable;

11

provided, however, that a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties.

OCGA § 13-8-53 (d). The current statutory provisions governing enforcement of restrictive covenants in employment contracts "became effective May 11, 2011, and apply to contracts entered into on and after May 11, 2011, and shall not apply in actions determining the enforceability of restrictive covenants entered into before such date." *Burson*, 343 Ga. App. at 160 (citations and punctuation omitted). Contracts entered into before May 11, 2011, must be analyzed under the law of restrictive covenants as it existed before that date. See *Holton v. Physician Oncology Svcs., LP*, 292 Ga. 864, 870 (3) n. 4 (742 SE2d 702) (2013). Holsinger's 2010 employment agreement with Fortress was entered into before May 11, 2011. "Under the prior law, courts could not modify void and unenforceable covenants." *Burson*, 343 Ga. App. at 161. And before May 11, 2011, Georgia "[did] not follow the 'blue pencil' doctrine of severability in construing employment contracts." *Dent Wizard Intl. Corp. v. Brown*, 272 Ga. App. 553, 556 (2) (612 SE2d 873) (2005). "There can be no 'blue pencil theory' of severability of covenants not to compete even where there is a severability clause[.]" *Lane Co. v. Taylor*, 174 Ga. App. 356, 358 (2) (330

12

SE2d 112) (1985) (physical precedent only). Here, Appellants argue that the Temporal Cap required the trial court to go beyond simple severance and reform any overbroad covenants to comply with applicable law. Because Georgia law prior to May 11, 2011, did not allow courts to modify void and unenforceable covenants, the trial court was not required to apply the Temporal Cap to reform the tolling provision to comply with Georgia law. See *Burson*, 343 Ga. App. at 161. Consequently, the trial court did not err in holding that the tolling clause in the employment agreement invalidates all the protective covenants for lack of defined temporal limits.

3. Because of our conclusion in Division 2, we need not address Appellants' other arguments regarding the validity of the non-recruitment clause and the non-solicitation clause.

4. Next, Appellants contend that the trial court erred in holding that the Duty of Loyalty Clause was incorporated into the 2010 employment agreement and then applying pre-May 11, 2011 law to those issues. We disagree.

The 2010 employment agreement explicitly incorporates the Duty of Loyalty Clause as follows: "all restrictions and covenants contained in the Hybrid Documents (including, without limitation, the 'Duty of Loyalty' as defined therein) are hereby incorporated by reference in this Letter Agreement upon your execution of such

13

documentation." Appellants argue that the trial court erred by finding that the 2010 employment agreement incorporates that Duty of Loyalty Clause "as a Protective Covenant." However, substance, not label, determines whether a contract provision is a restraint of trade. See, e.g., *Atlanta Bread Co. Intl., Inc. v. Lupton-Smith*, 285 Ga. 587, 589 (2) (679 SE2d 722) (2009) (treating a "loyalty provision" as a restrictive covenant; "Such restraints, no matter the nomenclature assigned to them, are disfavored in this state as a matter of public policy."). In substance, the Duty of Loyalty Clause is a covenant not to compete – it imposes a "duty . . . to refrain from competing with any member of the Credit Funds Group in the conduct of its business[.]" Furthermore, the 2010 employment agreement defines "Protective Covenants" to include not only the covenants appearing in the "Protective Covenants" section, but also those that are "otherwise incorporated into" the 2010 employment agreement.

Appellants contend that even if the 2010 employment agreement incorporated the Duty of Loyalty Clause, the trial court erred in applying pre-May 11, 2011 law to issues involving that clause. Because Appellants make this argument for the first time on appeal, "the contention must be deemed to have been waived." *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 90 (3) (764 SE2d 398) (2014). Appellants contend that

14

they did not waive this argument because they addressed the impact of the Georgia Restrictive Covenants Act in their brief filed in the superior court. However, Appellants did not argue below that the superior court should analyze the Duty of Loyalty Clause under the Georgia Restrictive Covenants Act. Appellants made a different argument below — in response to Holsinger's argument that granting the interlocutory injunction would not disserve the public interest, Appellants argued that, even though the underlying changes to Georgia law set forth in the Georgia Restrictive Covenants Act are not retroactive, the enactment of the Georgia Restrictive Covenants Act shows that Georgia public policy no longer disfavors restrictive covenants.

5. Next, Appellants contend that the trial court erred by holding that the New York forum selection clause was invalid. We disagree.

Choice-of-law and forum-selection clauses may be invalid if enforcement would contravene Georgia public policy. *Bunker Hill Intl., Ltd. v. Nationsbuilder Ins. Svcs.*, Inc., 309 Ga. App. 503, 506 (710 SE2d 662) (2011). "[I]f a party can show both that a restrictive covenant violates Georgia public policy and that a court in the selected forum likely would find the restrictive covenant enforceable, a compelling reason exists to avoid the contractual forum selection clause." *Carson v. Obor*

15

*Holding Co., LLC*, 318 Ga. App. 645, 648 (734 SE2d 477) (2012). Appellants argue that Holsinger failed to present sufficient evidence from which the trial court could conclude that a New York court would apply law that conflicts with Georgia policy. Furthermore, Appellants argue that even if a New York court did apply New York law, litigating the case in New York is appropriate because New York law and Georgia law post-Georgia Restrictive Covenants Act are consistent. The 2010 employment agreement selects New York law, and, as the superior court found, a New York court would likely honor the New York choice-of-law provision under its "substantial relationship" test. New York permits its courts "to sever and grant partial enforcement of an overbroad employee restrictive covenant." *BDO Seidman v. Hirshberg*, 712 NE2d 1220, 1226 (N. Y. 1999). Thus, enforcing the New York forum-selection clause would contravene Georgia's strong public policy against blue-penciling employment contracts entered into before May 11, 2011. See *Bunker Hill*, 309 Ga. App. at 506. Accordingly, the superior court did not err in holding that the New York forum selection clause was invalid.

6. Because of our conclusion in Division 5, we need not address Appellants' argument that the injunction order incorrectly held that Fortress waived its right to invoke the New York forum-selection clause.

16

7. Next, Appellants contend that the injunction is overbroad because it ruled on moot issues. We do not agree. Appellants argue that the enforceability of the Non-Compete Clause became moot when they stated in a brief to the trial court that they would not "seek to enjoin or prevent Holsinger from accepting employment elsewhere." Courts applying Georgia law have rejected similar tactics, holding that "[i]t does not matter that the Defendants have stated that they will not seek to enforce [an overbroad] covenant not to compete." *Moorad v. Affordable Interior Systems, LLC,* No. 1:11-CV-2580-RWS, 2012 WL 162289, at *5 (III) (N.D. Ga. Jan. 18, 2012). Under those circumstances, the overbroad covenant "still exists and facially restrains trade." Id. Appellants similarly argue that the enforceability of the Duty of Loyalty Clause is moot because, once Hybrid's managing member repurchased Holsinger's vested interests in Hybrid, Holsinger was no longer subject to that clause. However, because the 2010 employment agreement incorporated the Duty of Loyalty Clause, the validity of that clause remained at issue for purposes of assessing other restrictive covenants in the 2010 employment agreement. See *Dent Wizard*, 272 Ga. App. at 556 (2) (because one restrictive covenant in an employment agreement was unenforceable, other restrictive covenants in the same agreement were also unenforceable).

17

8. Appellants also argue that the injunction is overbroad because it is not limited to conduct in Georgia. However, Appellants did not argue below that any injunction should be limited to conduct in Georgia. Accordingly, Appellants failed to preserve this issue for review. See *Pfeiffer*, 275 Ga. at 829 (2).

9. Finally, Appellants argue that the injunction is overbroad because it bars remedies not tied to the restrictive covenants. Appellants contend that the injunction is overbroad because it impermissibly prohibits them from enforcing their rights in ways that are not tied to the restrictive covenants. Specifically, Appellants argue that the order seems to prevent Appellants from pursuing their counterclaims for breach of fiduciary duty, conversion, and computer theft and computer trespass. We agree. Although the superior court may have not have intended to prevent Fortress from pursuing counterclaims that do not depend on the restrictive covenants, including fiduciary duty claims, the the order may be construed as doing so and is, therefore, overly broad. In particular, the final sentence of the order states: "This prohibition includes, without limitation, bringing a lawsuit or otherwise threatening to impose damages or any other form of liability upon Holsinger or any other person or entity, including an entity employing Holsinger." Accordingly, on remand, the superior court must limit the scope of the injunction so that it does not prevent Fortress from

18

pursuing counterclaims that do not depend on the restrictive covenants contained in or incorporated into the employment agreement.

*Judgment vacated and case remanded with direction. McFadden, C. J., and Doyle, P. J., concur.*