S09A1485. COLEMAN et al. v. RETINA CONSULTANTS, P.C. et al.
(687 SE2d 457)

MELTON, Justice.

Brendan Coleman appeals from an order from the Superior Court of Richmond County, which enforced a non-compete clause in an employment agreement that Coleman had entered into with Retina Consultants, P.C. d/b/a The Retina Eye Center ("TREC"). The order enjoined Coleman from marketing certain software in competition with TREC and further ordered Coleman to pay certain money into the court registry. On appeal, Coleman contends that the trial court erred in upholding the non-compete clause because the clause was invalid, and further contends that the trial court was not authorized to force him to pay money into the court registry. For the reasons that follow, we affirm in part and reverse in part.

The record reveals that TREC is a medical practice specializing in retina surgery. Coleman is a software engineer who was hired by

318

TREC in 2000. Prior to his employment by TREC, Coleman wrote and marketed a medical billing program called Clinex. While employed by TREC, Coleman, with the assistance of the doctors who worked for TREC, modified the Clinex program to suit TREC's specific business and developed an integrated retinal practice computer application called Clinex-RE. Clinex-RE is a software program that integrated electronic medical records and image storage with a billing software component. Clinex and Clinex-RE are different programs, and Clinex-RE only works in conjunction with Clinex. TREC contends that Coleman incorporated into his Clinex program proprietary information and trade secrets of TREC in order to develop Clinex-RE.

In 2003, Coleman and TREC entered into a Software Agreement that allocated the rights to Clinex and Clinex-RE between TREC and Coleman. Although the Software Agreement states that Coleman owns Clinex and that TREC only has a non-exclusive license to use and sell Clinex, Paragraph 8 of the Agreement provides that, "Coleman will not distribute, vend or license to any ophthalmologist or optometrist the Clinex software or any computer application competitive with the Clinex-RE software without the written consent of TREC."

Prior to ending his employment relationship with TREC on November 24, 2008, Coleman developed encryption keys that were required for the installation of the Clinex-RE package (i.e., Clinex as integrated with Clinex-RE) on any computer in TREC's office and that were necessary for the program to work properly. Accepting the arguments that TREC presented at the hearing, the trial court specifically found that, upon his resignation, Coleman, with assistance from Melissa Padgett,[1] removed all applicable encryption keys and source and access codes along with any manual/installation instructions; and, since his resignation, Coleman has, among other things, attempted to distribute, vend, or license to other ophthalmologists the Clinex and Clinex-RE software; failed and refused to disclose to TREC the passwords required to read and revise copies of the Clinex and Clinex-RE software; refused to provide copies to TREC of all documentation in his possession and control relating to the programming and use of the software; refused to return to TREC copies of the Clinex-RE software; used and/or attempted to use TREC's proprietary information and trade secrets to compete with Retina Resource, LLC;[2] and, along with his co-defendant Padgett,

---

[1] Padgett is a former employee of TREC who was hired at the same time as Coleman and who resigned from TREC with Coleman to join Clinex Resource Group, LLC, a company formed by Coleman.

[2] Retina Resource, LLC is a company jointly owned by TREC and Coleman to market

took funds from Retina Resource, LLC's bank account in the amount of at least $74,000. Additionally, TREC removed $28,000 from Retina Resource, LLC's account.

In response to Coleman's actions, TREC filed suit in the Superior Court of Richmond County on December 5, 2008, alleging, among other things, breach of contract. The trial court granted a TRO on that same date and scheduled a hearing on TREC's motion for an interlocutory injunction. On January 13, 2009, the trial court entered an injunction in favor of TREC purporting to enforce the non-compete clause of the Software Agreement. The injunction further enjoins Coleman "from continuing to retain and use any applicable encryption keys, access codes, source codes and the multiple copies of manual/installation instructions" and "from retaining any passwords required to read and to revise copies of the Clinex and Clinex-RE software and retaining copies of all documentation in his possession or control relating to the programming and use of the Clinex and Clinex-RE software." The injunction also requires the parties to pay money into the court registry in an amount equal to the amount they each removed from Retina Resource, LLC's account. After Coleman filed his notice of appeal, however, the trial court entered an order that purports to vacate the part of the January 13 order that required the parties to pay money into the registry of the court.

1. Coleman claims that the non-compete clause in the software agreement is unenforceable as a matter of law. A contract "which may have the effect of or which is intended to have the effect of defeating or lessening competition, or encouraging a monopoly, [is] unlawful and void." Ga. Const. of 1983, Art. III, Sec. VI, Par. V (c); *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992). However,

> a restrictive covenant contained in an employment contract is considered to be in partial restraint of trade and will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public.

(Citation and punctuation omitted.) *W. R. Grace & Co.*, supra, 262 Ga. at 465 (1). "Whether the restraint imposed by the employment

---

Clinex and Clinex-RE.

contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances." (Citations and punctuation omitted.) Id. A useful tool in examining the reasonableness of a particular factual situation consists of a "three-element test of duration, territorial coverage, and scope of activity." Id.; *Watson v. Waffle House*, 253 Ga. 671 (2) (324 SE2d 175) (1985). Even if only a portion of a non-compete clause in an employment contract would be unenforceable, the entire covenant must fail because this Court will not apply the blue-pencil theory of severability to such restrictive covenants. *McNease v. National Motor Club of America, Inc.*, 238 Ga. 53 (2) (231 SE2d 58) (1976). Compare *Hamrick v. Kelley*, 260 Ga. 307 (392 SE2d 518) (1990) ("A trial court may apply the 'blue pencil' method where a covenant not to compete ancillary to a contract for the sale of a business designates an area greater than reasonably necessary to protect the purchaser.").

We agree with Coleman that the non-compete clause at issue in this appeal is unenforceable as a matter of law. The Software Agreement states that "Coleman will not distribute, vend or license to any ophthalmologist or optometrist the Clinex software or any computer applications competitive with the Clinex-RE software without the written consent of TREC." On its face, the agreement contains no time limitation, as the contract purports to limit Coleman's actions in perpetuity. A non-compete clause, such as the one at issue here, is invalid where it "contain[s] no limitation regarding duration." *William N. Robbins, P.C. v. Burns*, 227 Ga. App. 262, 264 (1) (488 SE2d 760) (1997). Furthermore, "[t]he covenant which we are asked to consider in this case, as it is written, has no territorial limitation. The absence of such a limitation renders it void." (Citations omitted.) *Fuller v. Kolb*, 238 Ga. 602, 603 (234 SE2d 517) (1977). But see *Palmer & Cay of Ga. v. Lockton Cos.*, 280 Ga. 479, 483 (3) (629 SE2d 800) (2006) (where former employee is prohibited from post-employment solicitation of employer customers that the employee contacted during his time with the employer, "there is no need for a territorial restriction expressed in geographic terms") (citation, punctuation and emphasis omitted). Indeed, the non-compete clause here would prohibit Coleman from marketing Clinex and any other competitive software to *any* ophthalmologist or optometrist, regardless of whether or not they are or ever were customers of TREC and regardless of where they are located. Such a restrictive covenant is overbroad and unenforceable. See *Fuller*, supra.

For the foregoing reasons, we find that the non-compete clause of the Software Agreement is unreasonable and that the trial court

therefore erred to the extent that the injunction enforces the clause against Coleman. Thus, the non-compete clause, in and of itself, cannot operate to prevent Coleman from marketing Clinex and Clinex-RE to ophthalmologists and optometrists.

However, this does not end our inquiry. Even without an express restrictive covenant, TREC could still prohibit Coleman from marketing the Clinex-RE package, that is, Clinex as integrated with Clinex-RE. Indeed, in Georgia, "[i]n no event shall a contract be required in order to maintain an action or to obtain injunctive relief for misappropriation of a trade secret." OCGA § 10-1-762 (d). See also *Thomas v. Best Mfg. Corp.*, 234 Ga. 787, 789 (3) (218 SE2d 68) (1975) ("Even without an express restrictive covenant, one of the implied terms of a contract of employment is that the employee will not disclose a trade secret learned during his employment, to a competitor of his former employer. It is not relevant whether or not a valid express written contract or restrictive covenant was entered into.") (citation omitted). The trial court also found that the Clinex-RE package is a trade secret belonging to TREC, and paragraph (c) of the injunction correctly prohibits Coleman "from using, communicating, revealing or otherwise making available confidential information and trade secrets belonging to [TREC]." Therefore, regardless of the fact that the non-compete clause in the Software Agreement is unenforceable, Coleman would nevertheless be prohibited from using the Clinex-RE package to compete with TREC to the extent that the Clinex-RE package contains TREC's confidential information and trade secrets. Coleman would not, however, be restricted from using and marketing his own version of Clinex, which is undisputably his own property, to the extent that it does not contain any of TREC's confidential information or trade secrets.

2. Coleman claims that the trial court erred by enjoining him from retaining copies of the Clinex program and accompanying software.[3] Specifically, the Software Agreement states that "the Clinex software is valuable commercial property of Coleman," and only requires Coleman to "*disclose* [to TREC] any passwords required to read and to revise . . . copies of the Clinex . . . software, and [to] provide *copies* of all documentation in his possession or control relating to the programming and use of the Clinex . . . software." The injunction, on the other hand, purports to enjoin Coleman from "continuing to *retain . . . any . . .* applicable encryption keys, access

---

[3] Coleman does not contend that the trial court erred in enjoining him from retaining copies of the Clinex-RE program. Indeed, pursuant to Paragraph 10 of the Software Agreement, Coleman agreed that he would "not retain in his possession or control any copies of the Clinex-RE software apart from copies required for the use of TREC, and for maintaining and further developing the Clinex-RE software for TREC."

codes, source codes and . . . copies of manual/installation instructions [for Clinex]" and further enjoins him "from *retaining any* passwords required to read and revise copies of the Clinex . . . software and from *retaining* copies of all documentation in his possession or control relating to the programming and use of the Clinex . . . software."

By prohibiting Coleman from retaining any and all information and documentation related to Clinex, the plain language of the injunction goes beyond the scope of that which is required of Coleman pursuant to the terms of the Software Agreement. Specifically, the wording of the injunction is broad enough to prevent Coleman from retaining any source codes and access codes applicable to his own Clinex program, and would even prevent him from retaining any documentation related to the programming of his own Clinex software. Because the plain terms of the injunction would prevent Coleman from having access to information and documentation related to his own Clinex program that he is entitled to keep pursuant to the terms of the Software Agreement, the trial court erred to the extent that it imposed requirements on Coleman with respect to his Clinex program that went beyond the scope of the terms of the Software Agreement.

3. Coleman contends that the trial court erred by requiring him to pay the money that he removed from Retina Resource, LLC's bank account into the registry of the court. Pursuant to OCGA § 9-5-6, "[c]reditors without liens may not, as a general rule, enjoin their debtors from disposing of property nor obtain injunctions or other extraordinary relief in equity."[4] Further, "[e]quity will not grant relief where there is an adequate and complete remedy at law." *Prosser v. Hancock Bus Sales*, 256 Ga. 399 (2) (349 SE2d 460) (1986); OCGA § 23-1-4. See also *Housing Auth. v. MMT Enterprises*, 267 Ga. 129 (1) (475 SE2d 642) (1996). As TREC has an adequate and complete remedy at law here because it could recover money damages from Coleman in the event that Coleman removed funds from Retina Resource, LLC that rightfully belonged to TREC, the equitable relief granted by the trial court was inappropriate. *Prosser*, supra. See also *Housing Auth.*, supra, 267 Ga. 129 (1) (contractor had adequate remedy at law where it could obtain money damages for

---

[4] We note that the exceptions to the general rule regarding creditors without liens do not apply to this case. See *The Albany and Renssellaer Iron and Steel Co. v. The Southern Agricultural Works*, 76 Ga. 135, 169 (3) (1886) (Exceptions to general rule include, "for instance, . . . the insolvency of the debtor, who, it is alleged, has fraudulently transferred his property to one who is in complicity with him in the fraud, and who is rapidly disposing of the property, or where the property is obtained by fraudulent representations with which the assignee is connected") (citation omitted).

alleged breach of contract). Accordingly, the trial court erred by ordering Coleman to pay the funds that he removed from Retina Resource, LLC's bank account into the court registry.[5]

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED NOVEMBER 9, 2009 —
RECONSIDERATION DENIED DECEMBER 15, 2009.

*Charles M. Cork III, Joseph R. Neal,* for appellants.

*Tucker, Everitt, Long, Brewton & Lanier, Thomas W. Tucker, John B. Long,* for appellees.

---

[5] TREC agues that this issue is moot because the trial court vacated the injunction during the pendency of the appeal pursuant to its authority under OCGA § 9-11-62 (c), which states that

> [w]hen an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

However, pretermitting whether proper circumstances existed under OCGA § 9-11-62 (c) to allow the trial court to suspend the injunction during the pendency of the appeal, the action taken by the trial court does not answer the question whether the trial court erred by *entering* the injunction in the first place. We therefore address the issue here.