**FIRST DIVISION
BARNES, P. J.,
SELF and MERCIER, JJ.**

**NOTICE:** **Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 13, 2017**

# In the Court of Appeals of Georgia

A17A1317.  BURSON  et al.  v.  MILTON  HALL  SURGICAL ASSOCIATES, LLC.

Mercier, Judge.

Milton Hall Surgical Associates, LLC ("MHSA") sued James Burson (a physician), N. Hadley Heindel (a physician), and Esther Askew (a physician's assistant) (collectively, the "Former Employees") for alleged misappropriation of trade secrets (Count I); breach of the duty of loyalty and good faith as to Burson and Heindel, and "under a theory of unfaithful agent" as to Askew, for "steal[ing] and misappropriat[ing] . . . trade secrets [and] confidential and proprietary business information," and violating restrictive covenants in their employment contracts (Count II); for alleged breach of their employment contracts (Count III); and for attorney fees and litigation expenses (Count IV). The Former Employees moved the trial court to

dismiss the suit pursuant to OCGA § 9-11-12 (b) (6), asserting, among other things,[1] that the restrictive covenants in the Former Employees' contracts were unenforceable and they could not be held liable for failing to comply with void covenants, and thus neither Count II nor Count III was viable. The trial court summarily denied the Former Employees' motion to dismiss and certified its ruling for immediate review. This Court granted the Former Employees' application for interlocutory appeal.

The Former Employees appeal the trial court's denial of their motion to dismiss, contending that the court erred (1) by failing to grant the motion to dismiss Count III as to Burson and Heindel (the "Physicians") because the restrictive covenants in their contracts, which seek to expand the geographical restrictions to include offices to which the Physicians are transferred, are unreasonable and unenforceable; (2) by failing to grant the motion to dismiss Count III as to the Physicians because the restrictive covenants in their contracts prevent them from accepting overtures from former patients and are an unreasonable restraint of trade; (3) by failing to grant the motion to dismiss Count III as to Askew, because the restrictive covenant in her contract, which

[1] The Former Employees also contended in the trial court that Count I was rendered moot, but in this appeal they "only seek review of claims based on purported violations of their restrictive covenants, Counts II and III."

2

is applicable to any territory to which she might be assigned, is too indefinite to be enforced; and (4) by failing to grant the motion to dismiss Count II, breach of fiduciary duty, as to all three Former Employees because they cannot be held responsible for failing to honor an unenforceable contract. For the reasons that follow, we affirm in part and reverse in part.

> We review a grant or denial of a motion to dismiss to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts. A trial court's ruling on a motion to dismiss is subject to de novo review on appeal.

*Penny v. McBride*, 282 Ga. App. 590 (639 SE2d 561) (2006) (citation and punctuation omitted).

With regard to employment contracts, Georgia law now generally permits the "enforcement of contracts that restrict competition during the term of a restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities," subject to certain limitations with regard to the types of employees against whom such restrictions may be enforced. OCGA § 13-8-53 (a); see OCGA § 13-8-52 (a) (1).

> Any restrictive covenant not in compliance with the provisions of [OCGA Title 13, Chapter 8, Article 4] is void and unenforceable; provided, however, that a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties.

OCGA § 13-8-53 (d). The current statutory provisions governing enforcement of restrictive covenants in employment contracts, OCGA § 13-8-50 et seq., became effective May 11, 2011, and apply to "contracts entered into on and after [May 11, 2011] and shall not apply in actions determining the enforceability of restrictive covenants entered into before such date." Ga. L. 2011, p. 399, §§ 4-6; see *Becham v. Synthes USA*, 482 Fed Appx 387, 388-389 (I) (A) (11th Cir. 2012).

Prior to May 11, 2011, however, "Georgia law disfavored restrictive covenants[,] . . . [and] Georgia's constitution also forbade the . . . General Assembly from authorizing restrictive covenants." *Becham*, supra at 388 (I) (A) (citations omitted); see (2009) Ga. Const. of 1983, Art. III, Sec. VI, Par. V (c).

> However, a restrictive covenant contained in an employment contract [entered into prior to May 11, 2011] is considered to be in partial restraint of trade and will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to

4

protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public. . . .Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all other circumstances.

*Coleman v. Retina Consultants, P.C.*, 286 Ga. 317, 319-320 (1) (687 SE2d 457) (2009) (citations and punctuation omitted). Under the prior law, courts could not modify void and unenforceable covenants. "Even if only a portion of a non-compete clause in an employment contract would be unenforceable, the entire covenant must fail because this Court will not apply the blue-pencil theory of severability to such restrictive covenants." Id. at 320 (1) (citation omitted).

1. Count III and the Physicians' Contract

(a) It is undisputed that Burson's contract with MHSA was entered into on May 1, 2010 and that Heindel's contract with MHSA was entered into on November 19, 2010, and thus the restrictive covenants contained in both contracts are subject to the pre-2011 law, and unenforceable provisions therein cannot be reformed. See *Coleman*, supra. The Physicians contend that the trial court erred in denying the motion to

dismiss Count III (breach of contract) as to the Physicians when the geographical restrictions in their agreements are unreasonable and unenforceable. We disagree.

Section 10 of Burson's contract contains restrictive covenants related to his employment, and provides that "for a period of two (2) years after termination of his employment . . . [he] will not directly or indirectly engage in the practice of the specialty of Otolaryngology or head and neck surgery within a geographic area that is within a radius of ten (1) miles of the Shakerag Building (the "Territory")." Section 10 of Heindel's contract provides that he "will not directly or indirectly engage in the practice of the specialty of Otolaryngology or head and neck surgery within a geographic area that is within a radius of ten (10) miles of the office at which [he] is assigned when he commences his duties (the "Territory")." Both Physicians' agreements contain the following language at the end of the restrictive covenants section:

> The parties agree to review the geographical area included within the Territory from time to time, at either party's request, in order that the Territory may be reformed so that its coverage upon Physician's termination will extend only to the geographical area in which the Physician is working at such time. Any reformation to be evidenced only by written amendment to this Agreement.

6

It is this latter paragraph, relating to the amendment of the "Territory," that the Physicians contend renders these restrictive covenants unreasonable. The Physicians cite *Orkin Exterminating Co. v. Walker*, 251 Ga. 536 (307 SE2d 914) (1983), arguing that "[i]n *Orkin* the restrictive covenant contained a provision - like that found in the Burson and Heindel contracts - which follows the employee to a new territory . . ., but only if the employee signs a new agreement which identifies the new territory[,] . . . and [t]he *Orkin* Court found such a provision unreasonable." See id. at 538 (2) (a).

In *Orkin Exterminating Co.*, supra, the employment agreement provided that the employee was prohibited from engaging in certain activities for two years, and the applicable territory was defined as follows:

> the cities of Augusta, McBean [and many other cities surrounding Augusta and the areas within a 15 mile radius of these cities] . . . or within any jurisdiction or territory in which the employee worked for the company at any time during the six (6) calendar months preceding termination of employment, and identified in an employment agreement with the Company.

*Orkin Exterminating Co.*, supra. at 536 (punctuation omitted). The Supreme Court of Georgia found that the restrictive covenant at issue in that case was not too indefinite to be enforceable because

its restrictions do not follow the employee unless he or she signs a new employment agreement which identifies the new territory. Thus, the covenant is not vague or indefinite in the sense described in [*Orkin Exterminating Co. v. Pelfrey*, 237 Ga. 284, 285 (1) (227 SE2d 251) (1976)] because it sufficiently delineates the territories to which the restrictions do apply, and because it contains no present obligation or promise as to unknown, future territories.

*Orkin Exterminating Co.*, 251 Ga. at 537 (1). However, the Supreme Court found that the covenant was unreasonable and overbroad because, among other things, after employees were transferred to a new territory,

Orkin might have neglected to require them to sign new contracts, or might have had them execute new contracts which did not rescind the prior contracts. The [employees] then could have spent several years in their new territory before quitting Orkin. At that point, despite their long absence from the August area, the employment agreements . . . would still have . . . prohibited them from engaging in [prohibited work] in the Augusta area for a period of 2 years.

*Orkin Exterminating Co.*, 251 Ga. at 538 (2) (a).

As in *Orkin Exterminating Co. v. Walker*, supra, the covenant at issue in the instant case does not follow the Physicians unless they agree in writing to the new definition of the restricted territory. Thus, it is not unreasonably vague or indefinite.

8

See *Orkin Exterminating Co.*, 251 Ga. at 537 (1); compare *Orkin Exterminating Co. v. Pelfrey*, supra. Furthermore, contrary to the Physicians' argument, the covenant here does not leave open the possibility of the restricted territory's inclusion of areas where the Physicians have ceased working for a significant period of time. Rather, it allows for reformation of the restricted territory, only by written amendment to the agreement, so that "[the territory's] coverage upon Physician's termination will extend *only to the geographical area in which the Physician is working at such time*." (Emphasis supplied.).

Furthermore, we disagree with the Physicians' contention that the provision in question amounts to an unenforceable "agreement to agree." "If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable 'agreement to agree.'" *Kreimer v. Kreimer*, 274 Ga. 359, 363 (2) (552 SE2d 826) (2001) (footnote omitted). Such is not the case here, where the applicable territory covered by the covenant is clearly defined, and the contract clearly defines the process by which it may be reformed.

9

(b) The Physicians also contend that the restrictive covenants in their agreements are unreasonable in that they prohibit the Physicians from accepting overtures from former patients. We agree.

"[An employer] may properly protect itself from the risk that former employees might appropriate its customers by taking unfair advantage of client contacts developed while working for [that employer], but the company cannot prevent them from merely accepting overtures from those customers." *Orkin Exterminating Co.*, 251 Ga. at 539 (2) (b); *Vulcan Steel Structures, Inc. v. McCarty*, 329 Ga. App. 220, 222 (1) (764 SE2d 458) (2014) (citation omitted). "The law is clear: solicitation requires some type of affirmative action; therefore, a non-solicitation provision may not contain a bar on the acceptance of business from unsolicited clients." *Vulcan Steel Structures, Inc.*, supra. (citation and punctuation omitted).

The Physicians' contracts provide that, during each Physician's employment at MHSA and for a period of two years after termination of his employment,

> Physician will not, on his own behalf or on behalf of any corporation, association, entity, or business, solicit, contact, call upon, communicate with, or attempt to communicate with any patient of [MHSA] (or its affiliates), with a view to providing any medical services in the field of Otolaryngology or head and neck surgery, provided that the restrictions

10

set forth in this clause . . . shall apply only to patients with whom Physician had material contact during such two (2) year period.

The Physicians cannot provide medical services to patients if they are not permitted to "communicate with" them "with a view to" providing those medical services. The non-solicitation covenant in the Physicians' contracts would prevent the Physicians from having any communication with patients of MHSA, even if those patients sought out Physicians. "Because this covenant prohibits not only solicitation of [MHSA's] former [patients], but also the acceptance of business from unsolicited former [patients], regardless of who initiated the contact, it is unreasonable." *Vulcan Steel Structures, Inc.*, supra (citation and punctuation omitted) (finding unenforceable a non-solicitation covenant that provided that for two years following termination of employment, the employee would not "on [his] own behalf or on behalf of any person or entity solicit, contact, call upon, communicate with or attempt to communicate with any customer of [his] employer or any representative of any customer or prospect of [his] employer, with the intent of providing any product competitive [with those] marketed or manufactured by [his] employer during the period of two . . . years immediately preceding termination of [his] employment."); see *Orkin Exterminating Company*, 251 Ga. at 539 (2) (b).

11

MHSA contends that "an identical non-solicitation provision" was approved by the Supreme Court of Georgia in *W. R. Grace & Co.*, *Dearborn Div. v. Mouyal* 262 Ga. 464, 467 (422 SE2d 529) (1992). However, "the issue in *W.R. Grace* was not whether the covenant was void for prohibiting unsolicited contact, but whether it was void because of the 'absence of an explicit geographical limitation.'" *Vulcan Steel Structures, Inc.*, supra at 223 (1) (citation omitted). Therefore this contention does not change our analysis that the non-solicitation provision in the Physicians' agreements is unenforceable.

"Former Georgia law is clear that if one covenant in an agreement subject to strict scrutiny is unenforceable, then they are all unenforceable." *Vulcan Steel Structures, Inc.*, supra at 224 (2) (citation omitted); see *Coleman*, supra. The restrictive covenants in the Physicians's contracts are unenforceable, and the trial court erred in denying the motion to dismiss Count III as to the Physicians, but only insofar as that Count alleges a breach of the restrictive covenants in Section 10 of their contracts. Count III of the complaint also alleges that the Physicians breached "all of the prohibitions found at [Section] 3" of their contracts. That section is entitled "DUTIES OF EMPLOYEE." Nothing in this appeal or in the underlying motion to dismiss pertains to the allegation that the Physicians breached Section 3 of their

12

agreements. The Physicians' contracts contain severability clauses and therefore the provisions other than the restrictive covenants are not automatically rendered void. See *Holland Ins. Group, LLC v. Senior Life Ins. Co.*, 329 Ga. App. 834, 837 (1) (766 SE2d 187) (2014) ("Void restrictive covenants, which cannot be blue-penciled out of the contract, do not void the entire contract when the contract contains a severability clause."). Count III is therefore not subject to dismissal insofar as it pertains to contractual obligations of the Physicians other than those found in the restrictive covenants in Section 10.

We note MHSA's argument that the issue of the non-solicitation provision presents nothing for our review because the argument is raised for the first time on appeal. The hearing transcript contradicts this assertion. The Physicians did not raise this issue in their written motion to dismiss, but did raise it at the hearing on the motion to dismiss. During argument, counsel for the Physicians argued, "There is yet another reason that [*Orkin Exterminating Co. v. Walker*] holds that the particular restrictive covenants applicable to the [Physicians] is not enforceable, and that deals with the type of restriction that's applicable." Counsel then quoted from the cited case, including the statement that "the company cannot prevent [former employees] from merely accepting overtures from those customers." Counsel then went on to say,

13

"Your Honor. . . we've attached the contracts in question to our brief, and . . . I want to read the offending portion of this particular contract." Counsel then quoted the non-solicitation restriction from the Physicians' contracts, arguing that the "provision [which says that the Physicians] . . . cannot communicate or attempt to communicate with a former patient . . . is an unreasonable restraint of trade."

After counsel for MHSA had presented argument against the motion to dismiss, the court asked Physicians's counsel: "Let me ask you about what they mentioned about the overtures from customers that you can't communicate with them even if they communicate with you." MHSA was thus given an opportunity to respond to the argument, to object to consideration of the motion on this ground because the argument was not raised in the Former Employees' brief in support of its motion, or to request additional time to brief the issue. No such objection or request was made. We therefore reverse the trial court's denial of the motion to dismiss Count III as to the Physicians, insofar as it alleges a breach of the restrictive covenants in Section 10 of the Physicians' contracts, and affirm the denial of the motion as to Count III insofar as it alleges a breach of other provisions in the Physician's contracts.

2. Count III and Askew's Contract

14

Askew contends that the trial court erred in denying the motion to dismiss Count III as to her, because the restrictive covenant in her employment contract is too indefinite to be enforceable. Askew's contract includes the following restrictive covenant:

> The employee shall be restricted from practicing for any other medical practice in any of the specialties of Otolaryngology [sic] Head & Neck Surgery for two (2) years upon termination [sic] employer within a fifteen (15) mile radius from current office locations. *This list will be amended without notice as addition [sic] practice locations occur.*

(Emphasis supplied). The geographical restriction in the covenant is vague and indefinite, and therefore it is not reasonable and consequently is not enforceable. See *Orkin Exterminating Co. v. Pelfrey*, supra. Under pre-2011 law, this is fatal to MHSA's claim against Askew for breach of contract based on the restrictive covenant, because the trial court could not modify the covenant. See *Coleman*, supra. Thus, MHSA "would not be entitled to relief under any state of provable facts," and dismissal of this count as to Askew would be appropriate, unless the contract was entered into on or after May 11, 2011. See *Penny*, supra.

There is a dispute in this case regarding the date upon which Askew's contract was entered into, because it was not fully executed. Askew's contract has two

15

signature lines; one for MHSA, with the name "Jeffrey M. Gallups, MD, FACS" typed below the signature line, and a second line with Askew's name typed below the signature line. Each signature line has a corresponding line adjacent to it, with "Date" typed beside the line. Askew signed the agreement, and dated her signature April 27, 2011. The agreement indicates that "the parties executed this agreement as of the 27th day of April 2011." The agreement was not executed (signed or dated) on behalf of MHSA. The agreement states in Section 1 that MHSA "agrees to employ [Askew] as a licensed nurse practitioner/physician assistant on a part time basis beginning July 11, 2011. The agreement will automatically renew each year, unless otherwise stated with a minimum of ninety (90) days notice." Askew contends that her contract was entered into on April 27, 2011, the date that she executed it. MHSA contends that because no one executed the agreement on its behalf, there was no binding agreement until MHSA otherwise assented to the terms of the contract, being July 11, 2011, the date her employment began per the terms of the contract.

"The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." OCGA § 13-3-2. "A contract that is intended to be signed by both parties, and so appears on its face, is complete when thus signed.

16

Once both parties have assented to its terms, a contract is binding." *MAPEI Corp. v. Prosser*, 328 Ga. App. 81, 84 (2) (a) (761 SE2d 500) (2014) (citations and punctuation omitted). "Assent to the terms of a contract may be given other than by signatures. . . .If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound." *Del Lago Ventures, Inc. v. QuikTrip Corp.*, 330 Ga. App. 138, 144 (2) (764 SE2d 595) (2014) (citations and punctuation omitted).

The parties therefore did not enter into the contract at issue here until MHSA assented to the terms of the agreement. We agree with Askew that MHSA is bound by the factual allegation in its complaint that "Askew was employed by [MHSA] as a licensed physician assistant beginning on April 27, 2011." See OCGA § 24-8-821; *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 501 (1) (748 SE2d 407) (2013) (applying former OCGA § 24-3-30, now OCGA § 24-8-821). MHSA asserts that evidence could be introduced to contradict this allegation.

> [A]dmissions in judicio in a party's pleadings bind the party so that they cannot put up evidence over objection to contradict such admissions. However, if the party amends its pleadings to withdraw the admissions, it may then introduce evidence contravening the admissions. If such contradictory evidence is admitted, even over the objection of the other

17

party, then under OCGA § 9-11-5 (b), such evidence may be deemed to amend the pleadings to withdraw the admissions.

*SAKS Associates, LLC v. Southeast Culvert, Inc.*, 282 Ga. App. 359, 364 (2) (638 SE2d 799) (2006). Here, however, the pleadings have not been amended to withdraw the admission and MHSA is bound by the admission that Askew began her employment in April 2011, at which time the contract would be binding. Thus, the pre-2011 law, disallowing blue-pencil modification of the restrictive covenant, renders Askew's restrictive covenant unenforceable. Even when construed in the light most favorable to MHSA, and with all doubts resolved in its favor, the allegations of the complaint disclose with certainty that it would not be entitled to relief under any state of provable facts as to the claims against Akew for breach of contract. See *Penny*, supra. We therefore reverse the trial court's denial of the motion to dismiss Count III as to Askew.

3. Count II

The Former Employees contend that the trial court erred in denying their motion to dismiss Count II, because they cannot be liable for breach of an unenforceable contract. We agree that Count II is not viable to the extent that the allegations are based on the breach of the restrictive covenants in the Former Employees' contracts,

18

namely, the allegations that "Defendants . . . solicited each other and Defendant Askew in violation of their restrictive covenants and in planning to operate a medical clinic in the filed of Otolaryngology in an area that breaches their contracts with [MHSA]."

Count II also alleges a breach of duty arising from the employment relationship as to all three Former Employees. The Former Employees argue that "an employee, even a corporate officer, does not breach fiduciary duties by making plans and arrangements to start a competing company while still employed." While this is true, "[an employee] is not entitled to solicit customers for a rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business." *White v. Shamrock Bldg. Sys.*, 294 Ga. App. 340, 346 (4) (669 SE2d 168) (2008) (citation and punctuation omitted). The Former Employees have not demonstrated that the allegations of Count II, when construed in the light most favorable to MHSA, and with all doubts resolved in the MHSA's favor, disclose with certainty that it would not be entitled to relief under any state of provable facts. See *Penny*, supra. We therefore reverse the trial court's denial of the Former Employees' motion to dismiss Count II, but only insofar as that Count is based on the breach of the Former Employees' restrictive covenants. The trial court's denial of the

motion to dismiss Count II as to the Former Employees in all respects other than the claims based on the alleged breach of the restrictive covenants is affirmed.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Self, J., concur*.