**THIRD DIVISION**
**ELLINGTON, P. J.,**
**GOBEIL and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**December 20, 2018**

# In the Court of Appeals of Georgia

A18A1660. PATRICIA KENNEDY v. THE SHAVE BARBER
COMPANY, LLC.

GOBEIL, Judge.

The Superior Court of Fulton County granted The Shave Barber Company,

LLC's ("The Shave") request for an interlocutory injunction against Patricia

Kennedy. The injunction restrains Kennedy from competing with The Shave and from

soliciting its customers and employees. Kennedy appeals, contending that the trial

court erred in applying Georgia's Restrictive Covenants Act, OCGA § 13-8-50, et

seq. (the "Act"). Finding no error, we affirm the trial court's findings related to the

restrictive covenants and its grant of an interlocutory injunction against Kennedy.

The record shows that in 2015, Kennedy began working as a master barber for

The Shave, a barbershop in Atlanta's Virginia-Highland neighborhood that caters to

men and provides hair cutting, shaving, and other grooming-related services and products. Kennedy and other employees of The Shave worked on a "commission only" basis, and were paid a percentage of their sales of services and products. The Shave's primary connection to its customers is through its stylists and barbers, and it uses social media to promote the business and individual barbers. While employed at The Shave, Kennedy used various social media accounts to inform customers of her schedules, promote products, and to show photographs of haircuts or services she had provided to customers. Most of Kennedy's social media posts were made on her professional page titled "PK Does Hair."

When Kennedy began her employment, she was classified as an independent contractor. However, following the departure of two employees of The Shave, both of whom opened competing barbershops in close proximity to The Shave,[1] the previous owner of The Shave required its stylists to sign employment contracts. In October 2016, Kennedy signed an agreement (the "agreement") which classified her as an "employee" of The Shave and contained several restrictions on her post-

---

[1]One such competing shop is located on Ponce de Leon Avenue, and the other shop is located in Atlanta's Kirkwood neighborhood.

employment activities.[2] Under the terms of the contract, Kennedy agreed not to work in the men's grooming industry within a three-mile radius of The Shave for two years after leaving her employment with The Shave (the "non-compete" provision); she also agreed not to solicit customers or employees of The Shave for one year after leaving her employment. Specifically, the agreement provided:

> 7. As part of the consideration for making this Agreement and in consideration of continued employment, for a period of one (1) year after termination of employment with THE SHAVE, Employee shall refrain from (i) interfering with or soliciting or attempting to solicit, for any business in the barber, salon[,] or men's grooming industry, any customer or potential customer of THE SHAVE with whom Employee had any personal contact or learned of or was introduced to during the term hereof and (ii) recruiting or soliciting or attempting to recruit or solicit any employee or agent of THE SHAVE for any business in the barber, salon[,] or men's grooming industry within a three (3) mile radius of THE SHAVE . . .

> 8. For a period of two (2) years after termination of employment with THE SHAVE, Employee shall not directly or indirectly compete with THE SHAVE by owning, managing, operating, representing, promoting, selling for, soliciting for, consulting for, controlling, or participating in

---

[2]The parties do not dispute that Kennedy and The Shave entered into the agreement, and, for purposes of this appeal, we will therefore assume that Kennedy was an employee of The Shave and not an independent contractor.

the ownership, operation, acquisition, or management of a business selling or providing [] services the same or similar to that provided by THE SHAVE within a three (3) mile radius of any SHAVE location. . . .

As part of the agreement, Kennedy acknowledged that she would "be customarily and regularly soliciting for THE SHAVE customers or prospective customers." The parties also agreed that, in the event of a breach or threatened breach, "the ascertainment of damages . . . would be difficult" and that The Shave "shall have the right to injunctive relief or other similar remedy in order to specifically enforce the provisions" of the agreement.

Kennedy resigned her position at The Shave in December 2017. She announced her last day of work for The Shave via social media by posting a photo of her work station; by tagging The Shave, this posted announcement appeared on The Shave's social media accounts. Brian Harn, The Shave's owner, discovered that Kennedy planned to open a new salon within three miles of The Shave, and he informed her that doing so would violate the agreement. Kennedy acknowledged that her new salon was located within three miles of The Shave, but she informed Harn that she would be faced with financial ruin if she were unable to open her new business as planned. Kennedy opened her salon, "PK Does Hair," on January 4, 2018. The new salon's

4

location is 2.1 miles from The Shave. She continued using her "PK Does Hair" social media accounts to solicit customers, and she re-posted photos taken at The Shave of its customers and tagged these customers in the posts.[3] On January 23, 2018, in a video posted to her personal Facebook page, Kennedy stated that "being your own boss is great" and referenced a then-current employee of The Shave by name.

Thereafter, on January 24, 2018, The Shave sued Kennedy for damages and injunctive relief, claiming she breached the terms of the employment contract. The Shave sought an interlocutory injunction pending a full adjudication on the merits of its underlying claims.[4] Kennedy challenged the enforceability of the contract, counterclaimed for violations under the Fair Labor Standards Act (29 USC § 216 (b)), and sought overtime compensation. On February 5, 2018, the trial court held a hearing on The Shave's request for interlocutory injunction and heard testimony from

---

[3] According to The Shave, Kennedy removed these tags when The Shave initiated legal action against her.

[4] The trial court and the parties used the terms "temporary restraining order" and "interlocutory injunction" in referring to the order now on appeal. We note that the this appeal does not involve a temporary restraining order because the trial court's order was issued after an adversarial hearing and does not expire within 30 days. See OCGA § 9-11-65 (b) ("A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney . . . and shall expire by its terms within such time after entry, not to exceed 30 days . . .").

Harn and Kennedy. On February 26, 2018, the trial court found the agreement's restrictive covenants reasonable and enforceable and granted The Shave's motion for an interlocutory injunction, enjoining Kennedy from

> owning, operating, promoting, selling for, soliciting for, consulting for, controlling or participating in the ownership, operation, or management of a business selling or providing the services the same or similar to that provided by The Shave within a three-mile radius of The Shave . . . .

> interfering with or soliciting or attempting to solicit . . . any customer or potential customer of The Shave with whom [Kennedy] had any personal or material contact . . . .

> recruiting or soliciting or attempting to recruit or solicit any employee or agent of The Shave . . . .

The trial court limited the geographic scope of the non-compete restriction to within a three-mile radius of The Shave's current location in the Virginia-Highland neighborhood. Kennedy now appeals, arguing that the trial court erred in granting injunctive relief.

Applying to employment agreements entered into after May 11, 2011, the Act governs the restrictive covenants in this case.[5] In the Act, the General Assembly recognizes that "reasonable restrictive covenants contained in employment and commercial contracts serve the legitimate purpose of protecting legitimate business interests . . . ." OCGA § 13-8-50. Further, the General Assembly expressed its intent "to provide statutory guidance so that all parties to such agreements may be certain of the validity and enforceability of such provisions and may know their rights and duties according to such provisions." Id. We are also mindful that the Act requires a court's construction of a restrictive covenant "to comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." OCGA § 13-8-54 (a).

---

[5]Prior to 2011, Georgia's constitution forbade the General Assembly from authorizing restrictive covenants, and such covenants were disfavored under Georgia law. See *Burson v. Milton Hall Surgical Associates, LLC*, 343 Ga. App. 159, 161 (806 SE2d 239) (2017). A constitutional amendment, approved and ratified in 2010, empowered the General Assembly to enact laws authorizing and regulating restrictive covenants in employment contracts. Ga. Const. of 1983, Art. III, Sec. VI, Par. V (c) (2) and (3). The General Assembly exercised that authority and enacted OCGA §13-8-50 et seq. in 2011. Ga. L. 2011, p. 399, § 4.

7

Regarding a trial court's decision to issue an interlocutory injunction, our Supreme Court has held that

> [a]n interlocutory injunction is an extraordinary remedy, and the power to grant it must be prudently and cautiously exercised. However, to be effective, the decision to grant an interlocutory injunction must often be made under time constraints that do not allow for the careful deliberation and reflection that accompany a full trial on the merits. Thus, the trial court must make a judgment call regarding the equities presented, and the court is vested with broad discretion in making that decision. . . . The grant or denial of an interlocutory injunction will not be reversed on appeal unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion.

*City of Waycross v. Pierce County Board of Commissioners*, 300 Ga. 109, 110-111 (1) (793 SE2d 389) (2016) (citations and punctuation omitted). With these guiding principles in mind, we now turn to Kennedy's specific claims of error.

1. Kennedy first argues that the trial court erred in granting The Shave an interlocutory injunction with respect to the non-compete provision of the agreement. Specifically, Kennedy asserts that The Shave failed to demonstrate a substantial likelihood of success at trial on the merits of the non-compete provision because (a) the non-compete is unenforceable against Kennedy; (b) the geographic restriction in

8

the agreement's non-compete provision is excessive; (c) The Shave failed to demonstrate a legitimate business interest justifying the non-compete provision; and (d) the scope of activities prohibited by the non-compete provision is unreasonable.

(a) Kennedy argues that she was not the type of employee subject to competition restrictions under the Act. We disagree.

Pursuant to the Act, restrictive covenants in employment contracts are permitted and enforceable if they are reasonable in time, geographic area, and scope of prohibited activities. OCGA § 13-8-53 (a). Even if a covenant not to compete is reasonable in these respects, its applicability is limited to employees who customarily and regularly solicit customers, customarily and regularly sell products or services, or have defined managerial, key employee, or professional duties. OCGA § 13-8-53 (a) (1), (2), (3), and (4).

In determining which types of workers may be subject to covenants not to compete, the Act defines an "employee" as including any "person or entity, including an independent contractor, in possession of selective or specialized skills, learning, or abilities or customer contacts, customer information, or confidential information . . ." OCGA § 13-8-51 (5) (C). In relevant part, the Act permits the enforcement of post-employment non-compete provisions against employees who "[c]ustomarily and

9

regularly solicit for the employer customers or prospective customers." OCGA § 13-8-53 (a) (1).

As part of her employment contract, Kennedy expressly agreed to customarily and regularly solicit customers or potential customers for The Shave. The record contains evidence that Kennedy had direct, extensive contact with customers and that she customarily and regularly solicited customers on behalf of The Shave. In finding that Kennedy was subject to the Act, the trial court considered evidence that Kennedy regularly posted her work schedule and a link to The Shave's website to her social media accounts, encouraged clients and potential clients to patronize The Shave, posted photographs of services she provided at The Shave, and directly mentioned, linked, or tagged The Shave in these posts. On average, Kennedy provided haircuts and other grooming services to 230 repeat customers per month. Harn averred that "once a customer leaves and goes somewhere else for its hair grooming needs, it is unlikely for that customer to return to The Shave." Kennedy developed close relationships with several of her clients, and there was evidence that The Shave assisted Kennedy in developing these substantial relationships by expending considerable resources in developing its name recognition and customer base. Based on this evidence that Kennedy customarily and regularly solicited customers on

behalf of The Shave, the trial court did not abuse its discretion in finding that Kennedy performed the types of duties that would classify her as an employee and subject her to the Act pursuant to OCGA § 13-8-53 (a) (1).

(b) Kennedy argues that the trial court erred in finding the non-compete provision of the agreement enforceable because that provision contained an unreasonable and uncertain geographic restriction. We discern no error.

Under OCGA § 13-8-53 (c) (2), language describing a geographic restriction in a non-compete provision of an employment contract is sufficient "if the person or entity bound by the restraint can reasonably determine the maximum reasonable scope of the restraint at the time of the termination." The Code further provides certain presumptions regarding the reasonableness of a geographic restriction:

> In determining the reasonableness of a restrictive covenant that limits or restricts competition during or after the term of an employment or business relationship, the court shall make the following presumptions: . . . A geographic territory which includes the areas in which the employer does business at any time during the parties' relationship, even if not known at the time of entry into the restrictive covenant, is reasonable provided that: (A) The total distance encompassed by the provisions of the covenant also is reasonable . . .

11

OCGA § 13-8-56 (2) (A). In determining whether a particular restriction is reasonable, OCGA 13-8-53 (c) (1) provides that "[w]herever a description of activities, products, and services, or geographic areas, is required by this Code section, any description that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement . . . ." Additionally, the statute permits a court to modify, or "blue pencil," a covenant that "is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." OCGA § 13-8-53 (d); see also OCGA § 13-8-54 (b) (providing that, "if a court finds that a contractually specified restraint does not comply with [OCGA § 13-8-53], then the court may modify the restraint provision and grant only the relief reasonably necessary to protect such interest or interests and to achieve the original intent of the contracting parties to the extent possible").

Here, there was evidence that most of The Shave's customers live and work within three miles of its Virginia-Highland location. There was also evidence that The Shave lost customers and that its business suffered when two former employees of The Shave opened competing barbershops within three miles of The Shave. Based on the limited territorial restriction involved in the non-compete covenant, and the

12

demonstrated harm if the covenant is not enforced, we find the geographic limitation in this case to be reasonable[6] and that Kennedy had fair notice of this restriction. Further, although The Shave currently operates only one location and has no immediate plans to open other locations, the trial court eliminated any uncertainty in the geographic scope of the non-compete by limiting the restricted area to a three-mile radius surrounding The Shave's current location. Because the three-mile radius as modified by the trial court is reasonable under the facts of this case, we find no error.

(c) Kennedy argues that The Shave failed to show that it had a legitimate business interest justifying the extent of the non-compete provision. We disagree.

Under the Act, "[t]he person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." OCGA § 13-8-55. Legitimate business interests

---

[6]Prior to the enactment of OCGA § 13-8-50 et seq., this Court upheld and enforced covenants that were more restrictive than the three-mile radius covered by the non-compete provision in the agreement in the instant case. See, e.g., *McAlpin v. Coweta Fayette Surgical Assocs., P.C.*, 217 Ga. App. 669, 672 (2) (458 SE2d 499) (1995) (no practice of medicine or surgery for two years in ten county area, including part of Atlanta); *Moore v. Preferred Research*, 191 Ga. App. 26, 29 (2) (381 SE2d 72) (1989) (restriction encompassing 25-mile radius of any of employer's places of business held to be reasonable).

13

include, but are not limited to, "[s]ubstantial relationships with specific prospective or existing customers . . . or clients" and "client good will." OCGA § 13-8-51 (9) (C) and (D). In its request for an interlocutory injunction, The Shave asserted that it sought enforcement of the agreement to prevent the loss of "significant customer goodwill."

The trial court found that The Shave's non-compete provision was supported by legitimate business interests in that it had devoted considerable resources to developing its name recognition and customer base. Under the plain language of the Act, The Shave had a legitimate business interest in protecting itself from the risk that Kennedy might appropriate customers by taking advantage of the contacts developed while she worked at The Shave.

(d) Kennedy argues that the non-compete provision is unreasonable in the scope of prohibited activities. Contrary to Kennedy's assertions, we disagree that the terms of the non-compete clause bar her from working for any competitor in any capacity.

The non-compete clause precludes Kennedy from selling men's grooming services and products within a three-mile radius of The Shave only if, in so doing, she competed with The Shave. Specifically, the agreement bars Kennedy from competing

14

with The Shave by working for a competitor "selling or providing the *services* the same or similar to that provided by The Shave . . ." The agreement does not preclude Kennedy from working at a retail establishment that sells hair care or grooming products (but does not provide styling services) within a three-mile radius of The Shave, nor does it preclude her from working as a stylist outside of the territorial restriction. The trial court did not err in finding the agreement's scope of prohibited activities to be reasonable under the circumstances.

Here, the evidence strongly suggests Kennedy is in violation of several of the restrictive covenants which where specifically designed to protect The Shave from competition from its former employees and loss of its client base. Therefore, the trial court did not err in finding the non-compete enforceable against Kennedy and in granting interlocutory relief on this ground.

2. Kennedy next argues that the trial court erred by finding that The Shave demonstrated a substantial likelihood of success on the merits of its customer non-solicitation claim. Specifically, Kennedy contends The Shave did not provide a legitimate business interest justifying the customer non-solicitation covenant, and she further asserts that "using her social media accounts to post pictures of her work" and

"tagging The Shave's customers in pictures" posted to her social media accounts does

not constitute solicitation.

> The merits of a claim may be considered when ruling on injunctive relief:

> Although the merits of the case are not controlling, they nevertheless are proper criteria for the trial court to consider in balancing the equities. If the trial court determines that the law and facts are so adverse to a plaintiff's position that a final order in his favor is unlikely, it may be justified in denying the temporary injunction because of the inconvenience and harm to the defendant if the injunction were granted. Thus, in determining whether the equities favor one party or the other, a trial court may look to the final hearing and contemplate the results.

*R.D. Brown Contractors, Inc. v. Bd. of Ed. of Columbia County*, 280 Ga. 210, 212

(626 SE2d 471) (2006) (citation, punctuation, and emphasis omitted).

> Pursuant to OCGA § 13-8-53 (b), an employee may agree

> to refrain, for a stated period of time following termination, from soliciting, or attempting to solicit, directly or by assisting others, any business from [the] employer's customers, including actively seeking prospective customers, with whom the employee had material contact during his or her employment for purposes of providing products or services that are competitive with those provided by the employer's business.

OCGA 13-8-53 (b). The evidence authorized a finding that many of Kennedy's social media posts constituted customer solicitation. The trial court heard evidence that Kennedy was attempting to solicit clients with whom she had material contact during her employment with The Shave and that she met these clients as a direct result of her employment with The Shave.[7] The trial court did not abuse its discretion in finding that these targeted posts and tags constituted solicitation and in enjoining Kennedy from soliciting The Shave's customers within the reasonable limitations provided in the agreement.[8]

---

[7] For example, Kennedy tagged The Shave in a post announcing her final day of work, thereby informing followers of the page, including The Shave's customers, that she intended to open her own salon. Using the same social media accounts she had previously used to solicit customers on behalf of The Shave, Kennedy posted photos of The Shave's customers that were taken at The Shave and in which The Shave's branding is clearly visible and tagged the customers in these posts. Twelve days after her resignation, Kennedy implored existing clients to refer new clients in order to receive discounts. The trial court was authorized to find that the purpose of these social media posts and communications was to inform Kennedy's former clients that she was opening a new salon and to solicit their business.

[8] We are not deciding whether unsolicited content or posts of a personal nature on an individual's social media accounts can constitute solicitation. Several of the posts and tags at issue here, however, were sufficient to warrant the trial court's grant of an injunction because they were directly related to Kennedy's new business venture and directed at The Shave's customers.

17

3. Kennedy argues that the trial court erred by finding that The Shave demonstrated a substantial likelihood of success at trial on the merits of its employee non-solicitation claim. Specifically, Kennedy contends that the record is devoid of any evidence that she violated the employee non-solicitation covenant. We disagree.

Harn averred that The Shave faced immediate and irreparable harm due to Kennedy's attempts to influence employees to leave The Shave. The Shave presented evidence, including the Facebook video naming one of The Shave's employees, that Kennedy's actions constituted a potential breach of the employee non-solicitation provision of the agreement. Given such evidence, we cannot find it was an abuse of the trial court's discretion to grant an interlocutory injunction protecting The Shave's interest in maintaining its workforce, pending a final adjudication on the merits.

4. Finally, Kennedy argues that the trial court erred by failing to give "proper consideration" to the factors at issue in granting the non-compete interlocutory injunction. Specifically, she asserts the trial court erred by failing to properly consider the harm that she would suffer if the injunction were granted. We discern no error.

> In deciding whether to issue an interlocutory injunction, the trial court should consider whether: (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that

18

the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of [its] claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest.

*SRB Inv. Services, LLLP v. Branch Banking and Trust Co.*, 289 Ga. 1, 5 (3) (709 SE2d 267) (2011) (citation and punctuation omitted). This "four factor test . . . is a balancing test and [] it is not incumbent on the movant to prove each factor." *City of Waycross*, 300 Ga. at 112 (1).

Kennedy claims she will face bankruptcy and financial ruin if the injunction is upheld, and we are mindful that this harm is not insignificant. At the hearing below, in acknowledging the potential harm Kennedy might sustain, the trial court remarked that, "if we're balancing harms, I haven't heard that [T]he Shave is going to go out of business if Ms. Kennedy stays where she is. I have heard that Ms. Kennedy might well have to declare bankruptcy. That's not going to jail, that's not losing your right arm, but it's harmful if you're planning on securing any credit in the near future." The trial court also inquired of Kennedy whether it would be feasible for her to work in another location and earn money to help manage the lease payments.

Here, the trial court found Kennedy in violation of the agreement–an agreement the trial court found provided fair notice of the maximum reasonable scope of the

19

non-compete restraint. Further, absent entry of an injunction, The Shave stood to lose customer relationships and would suffer irreparable harm. In its order granting the interlocutory injunction, the trial court expressly noted that "[w]hile the temporary relief [The Shave] seeks will no doubt create hardships for [Kennedy], the 'relative equities' favor [The Shave]." The trial court clearly and carefully weighed the harm involved in issuing the interlocutory injunction, and we find no abuse of discretion in the grant of injunctive relief. See *Bijou Salon & Spa, LLC v. Kensington Enterprises, Inc.*, 283 Ga. App. 857, 861 (643 SE2d 531) (2007) (no abuse of discretion where trial court heard evidence on both sides of the issue and found that the equities weighed in favor of the employer and that the status quo of not having competition by former employee within the restricted area was preserved by issuance of interlocutory injunction).

Accordingly, we affirm the trial courts finding that the restrictive covenants were reasonable and affirm the grant of the interlocutory injunction.

*Judgment affirmed. Ellington, P. J., and Coomer, J., concur*.